## Case No. 11,252.

### Ex parte POLLARD.

### In re ELIOT FELTING MILLS.

[2 Lowell, 411;[1] 17 N. B. R. 228.]

District Court, D. Massachusetts. July, 1875.

#### BANKRUPTCY—UNLIQUIDATED DAMAGES.

1. Where A. was employed as superintendent of a factory by a written contract, which was to run for ten years, and the parties bound themselves to performance in the sum of $10,000 liquidated damages, and, in an earlier arrangement of a like kind, had called the sum both a penalty and liquidated damages,—held, a penalty.

[Cited in Heatwole v. Gorrell, 12 Pac. 138.]

2. The filing a petition in bankruptcy by a corporation, ipso facto, dissolves a contract with an employee, and is tantamount to a notice of its dissolution; and he may have his damages assessed, and prove the amount in the bankruptcy.

3. Semble, that damages for the breach of an implied contract may be proved in the same way.

4. If an absolute contract is broken, so that a cause of action has arisen, it is no objection to assessing and proving the damages in bankruptcy, that they may be difficult of estimation; though, where the debt is contingent, and the contingency has not happened, that consideration may be decisive against the proof.

The manufacturing corporation now bankrupt, made, through its treasurer, a written contract, July 1, 1873, with the petitioner, by which he was to serve them as superintendent for ten years, and to transfer to them, and to another corporation having the same treasurer, all inventions which should be made by him during that time and the patents granted therefor, the corporations

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

paying all expenses connected with the inventions and the patents; and the felting mills were to pay him $4,000 a year and seven and a half per cent of their net profits, and to give him the use of a certain house free of rent. The parties bound themselves, each to the other, in the sum of $10,000, by way of liquidated damages. The contract was duly performed on both parts until Feb. 16, 1875, and the petitioner had obtained and transferred four patents in accordance therewith; on that day the felting mills filed their voluntary petition in bankruptcy. At the first meeting of creditors, the petitioner filed a proof for the $10,000 as liquidated damages and for some arrears of salary, and for the amount of a note of the corporation. His proof was suspended, and a part of it was disputed by the assignees when chosen. The assignees denied the authority of the treasurer to make the contract, and that there was any such breach of it as would allow of proof in bankruptcy, and disputed one of the items of set-off. A hearing was had before the court upon the matters of fact and law, excepting the amount for which the petitioner could prove, if he could prove at all, under the contract.

T. L. Wakefield, for petitioner.
W. P. Walley, for assignees.

LOWELL, District Judge. The evidence discloses that the treasurer of this corporation was the principal stockholder, and that he conducted its business affairs, referring to the board of directors such questions as he thought necessary; that he had made a similar contract with the petitioner for five years, which had expired by limitation before that of July, 1873, was entered on. Nothing was cited from the by-laws requiring such a contract to be made by the directors, and the directors are not proved to have been ignorant of this contract. I think both the petitioner's points are sustained: that the treasurer might lawfully make the contract, and that the directors may be presumed to have ratified it.

Is the sum of $10,000 to be considered as liquidated damages? It is called so by the parties, but it is not wholly immaterial to observe that in the earlier contract the same parties bound themselves to each other "in the penal sum of $10,000 liquidated damages." Upon reading the two contracts I do not think the omission of the expression "penal sum" was intended to change the character of the undertaking. The courts are very much disposed to treat these agreements for round sums as penal, that is to say, as having little or no meaning, and rightly, for I believe they are really so regarded by the parties in most cases. There are many forms of contract in which the practice is universal of inserting a sum of money, sometimes called penal and sometimes not, to the payment of which the parties bind themselves in case

or a breach, and I suppose the custom has grown out of an earlier state of the common law in which an advantage was gained by such a stipulation when the contract came to be sued on. It is a singular fact, that a penal sum is still inserted in the writ of injunction used by some of our courts, though it is wholly without meaning in that place. Cases can be cited in which what the parties have called penalties are held to be liquidated damages, but it is much more common to hold stipulated damages to be penal. The decisive point in this case is, that this contract was to run for ten years; and it can hardly be believed that the parties intended that the same amount should be paid for a breach in the last month of the tenth year, as for one in the first month of the first year.

Has there been such a breach of the contract as will give the petitioner a right of proof for any damages which he may have suffered thereby against the estate of the bankrupt corporation? This is the difficult question. It is easy to show the very great hardship of a negative answer to this question. No corporation that has been wound up in bankruptcy in this district has ever been revived in such a form as to give its old creditors redress. In most cases, here or elsewhere, a dividend is all that is left. Accordingly we find that the "Companies' Act," as it is called, in England, provides for the proof of all claims and demands, certain or uncertain, present or future, in words which undoubtedly include all damages, even for torts. 26 & 27 Vict. c. 89, § 158. And this is no more than common justice. It is to be regretted that the attention of congress was not attracted to this matter; but as the law stands, it is the same for corporations and individuals, notwithstanding the difference in their situation.

But I am of opinion that the law for individual bankrupts gives a right of proof in such a case. It is the obvious intent of the act to give to debtors all reasonable relief, and to creditors all reasonable remedy, by permitting proof of all debts and damages arising out of contract that can be fairly found to be due before the final settlement of the estate. The courts in this country have recognized this intended liberality. Thus it was held that unliquidated damages in matters of contract could be proved under the insolvent law of Massachusetts, though the written law spoke only of debts. Lothrop v. Reed, 13 Allen, 294. Our statute expressly provides for unliquidated damages. Rev. St. § 5067. I have had a few cases under this clause, but none which required a written judgment, and I remember fully but one, which is referred to and stated in my opinion in Ex parte Houghton [Case No. 6,725]. I have seen no report of any case elsewhere that will aid us.

It is now well settled that when one party to a contract definitely refuses to perform his part of it, even before the time of performance has arrived, the other party may have an action immediately; and, a fortiori, where after the execution of the agreement has been begun he refuses to complete it. The only doubt was whether the injured party could have an immediate and complete remedy, once for all, without tender of performance on his part, and the decision is, that he may. See Beckham v. Drake, 2 H. L. Cas. 645; Emmens v. Elderton, 4 H. L. Cas. 624; Cort v. Ambergate N. & B. & E. J. Ry. Co., 17 Q. B. 127; Hochster v. De la Tour, 2 El. & Bl. 678; Grove v. Donaldson, 15 Pa. St. (3 Har.) 128; In re Wheeler [Case No. 17,488]. It is plain, therefore, that if the company had discharged the petitioner the day before the proceedings in bankruptcy were begun, he would have a claim for damages which he might prove. The cases I have had were of that precise character, and it has not been denied that they were correctly decided.

Does it make any difference that the company neglected to give the petitioner a formal dismissal? I think not. They did an act which incapacitated them from fulfilling their contract, and I deem it an unnecessary and false nicety to hold that, because this act was the very filing the petition in bankruptcy, therefore there was no breach at the time of the petition. It resembles very much the case of an owner of a periodical publication, who, having contracted for a series of articles by an approved writer, should sell his magazine while the contract was running (Planchè v. Colburn, 8 Bing. 14), or of a man who, having promised to marry one woman, should marry another.

I hold that the contract was, ipso facto, dissolved by the filing of the petition in bankruptcy, which made its performance by the bankrupts impossible and by the petitioner illegal, for he had no right to employ a man or pay a dollar after that time; and that the fact that the bankrupt corporation did not, five minutes or more before such filing, formally dismiss the petitioner from their service is immaterial. It was argued that the contract was not dissolved, because the assignees might be authorized to carry on the business of the bankrupt for a period not exceeding nine months, with the assent of the court and of a certain portion of the creditors. But such an order, if passed, would not either continue or revive this contract; it would not require the assignees to employ the petitioner, unless they found it to be expedient, nor him to accept their employment. It would be a new engagement upon new terms. That the assignees consider the contract dissolved is plain, from their refusing to credit the petitioner the full amount of his salary, while he remained in charge of the works after the bankruptcy, saying that he must accept a quantum meruit, which is entirely just and sound.

One word as to the point that there is some contingency in this contract. I cannot see

any. It is an absolute contract for employment for a determinate period at a fixed compensation. The clause in the statute, concerning the proof of contingent debts and liabilities. aids us to discover the general intent that debts may be proved, though not either due or payable at the day of the bankruptcy. but it has no other bearing, that I see, upon this case. The contingent liabilities that the courts have always refused to assess, are those in which it is uncertain whether there ever will be any thing to assess. Riggin v. Magwire, 15 Wall. [82 U. S.] 549. It is no objection to a proof that the court or a jury may find difficulty in assessing damages for a breach of an absolutely broken contract, any more than that there may be complications in an account; and so is the law of contingent debts, if the contingency happens before the close of the bankruptcy. If the liability is absolute, there is no more or less difficulty in liquidating it, and no less obligation to liquidate it in the court of bankruptcy than in any other.

I have examined the English decisions under the act of 1861, which was somewhat similar to ours, in permitting proof for damages arising by contract (24 & 25 Vict. c. 134, § 153), and they do certainly put a narrow construction upon the words, by holding that the contract must be express, and the breach must precede the adjudication in bankruptcy. I am not sure that they intended to say that it might not be contemporaneous with the adjudication. The legislature were dissatisfied with those decisions, and in the act of 1869 have explicitly declared that damages for breach of a contract, express or implied, may be proved, and this whether the breach is before or after adjudication. 32 & 33 Vict. c. 71, § 31. I do not think that our statute will be found to need amendment in this respect. I do not expect to see it decided that damages for breach of an implied contract cannot be proved, and I doubt whether the time of breach will be so strictly confined as by the former English rule.

One item of the set-off is disputed, but the evidence does not enable me to pass upon it, and its decision will form part of the future adjustment or liquidation. The petitioner had $500 in his hands, and sets it against so much of his salary. There is no doubt that he can do this under the mutual credit clause of the statute, unless the money was put into his hands by the treasurer, at a time and under circumstances that would make it a preference if applied to pay the salary. It was said to be a sort of trust fund, but I do not so understand it. The petitioner was in the habit of receiving and paying out moneys for various purposes, and any balance that he might happen to have at the time of bankruptcy would clearly be a subject to set-off, whether he were in the habit of paying his own salary or not. I suppose it would be so under the ordinary practice in Massa-

chusetts, but it is clearly within the bankrupt act.

Petitioner has the right to prove for damages as well as for the note and any arrears of salary. If the mode of assessing damages is not agreed on by the parties, the case will go to a jury.