LONE STAR SALT COMPANY v. TEXAS SHORT LINE RAILWAY COMPANY.

No. 1483.   Decided January 25, 1906.

1.—Contract Construed.

An agreement by a manufacturing company to furnish, for twenty years, to a projected railway company which was to build a competing road to its plant 66 percent of all the tonnage moved by rail incident to the operation of such factory's work, with a provision for $6,000 liquidated damages per annum for breach of such contract, did not bind the company to furnish such proportion of its tonnage as it accrued, but only to the furnishing that proportion yearly, leaving the details as to time and amount of shipments to the control of the shipper.  (Pp. 441–443.)

2.—Same—Specific Performance.

A contract to have a certain proportion of the freight shipped by defendant per annum transported over plaintiff's railway, was one in which plaintiff could be fully compensated for breach thereof by damages certainly ascertainable, though a provision fixing liquidated damages for the breach should be held to be penal only; and being compensable in damages the contract was not one which called for specific enforcement.  (P. 444.)

3.—Same.

Specific performance is decreed to enforce the doing of what the party has himself  agreed to do, and can not extend to something not agreed to, though deemed essential to the complete attainment by plaintiff of the advantages anticipated from the contract.  (P. 442.)

4.—Penalty—Liquidated Damages.

Whether a sum named in the contract in this case as liquidated damages could be treated as a penalty only, is suggested and authorities cited, but not decided.  (Pp. 444, 445.)

5.—Specific Performance—Enforcement of Decree.

The mere fact that a contract is of such a nature that a decree for specific performance can only be ordered in general terms leaving the parties with no practical rule to follow, and will thus require the constant superintendence by the court of its execution, continuing through a long period of time, would be sufficient ground for refusing such decree to a party otherwise entitled to it.  (Pp. 445–447.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

The railway company sued the salt company and had judgment for the specific performance of the contract sued on, which was affirmed on appeal by defendant.  Appellant thereupon procured writ of error.

*Coke & Coke,* for appellant.—The remedy at law for damages being adequate, specific performance should have been refused.  Richmond v. The Dubuque & S. C. Ry. Co., 33 Iowa, 479; Rollins Investment Co. v. George, 48 Fed., 777; Mirandona v. Burg, 21 So., 723; McCarter v. Armstrong, 10 S. E., 954; Fry on Specific Performance, secs. 40, et seq.; Waterman on Specific Performance, secs. 9, et seq.; Pomeroy on Specific Performance, sec. 47.

As the contract provides for liquidated damages in case of its breach, and the defendant is amply solvent, there is no ground for equitable relief.  Pomeroy, Eq. Jur., vol. 1, sec. 447; Pomeroy on Specific Per-

formance, sec. 50, also n. 2, p. 17; Martin v. Murphy, 28 N. E. Rep., 1118; Hahn v. Concordia Soc., 42 Md., 460; Dukes v. Bash, 64 N. E., 47; Haskins v. Dougherty, 69 S. W., 106; McCaull v. Braham, 16 Fed., 41.

A contract will not be specifically enforced unless the remedy is mutual; i. e., the court will not compel the defendant to perform the contract unless it can at the same time compel the plaintiff to perform it. This mutuality is lacking in the contract sued on, as specific performance on the part of plaintiff can not be compelled for two reasons: (1) because the contract is terminable at the option of plaintiff, and (2) because the duties required of plaintiff under the contract necessitate the maintenance and operation of its railway for twenty years, and this no court will undertake to compel.

(1) That mutuality of remedy is essential: Pomeroy on Specific Performance, secs. 162-165; Prusiecke v. Ramzinski, 81 S. W. Rep., 773; Staunton v. Singleton, 59 Pac. Rep., 148; Cooper v. Pena, 21 Cal., 410; Richmond v. The Dubuque & S. C. Ry., 33 Iowa, 486; Pullman Co. v. Texas & Pac. Ry. Co., 11 Fed. Rep., 629; Louisville, etc., Ry. Co. v. Bodenschatz, 39 N. E., 706; Welty v. Jacobs, 40 Law Rep. Ann., 98; Ikerd v. Beavers, 7 N. E., 328; Lattin v. Hazard, 27 Pac. Rep., 515; Alworth v. Seymour, 44 N. W., 1030; Buck v. Smith, 18 Am. Rep., 88; Hoctor-Johnston Co. v. Billings, 91 N. W., 183; Leicester Piano Co. v. Front, etc., Improvement Co., 55 Fed. Rep., 204; Bickford v. Davis, 11 Fed., 549; Appeal of Ballou, 19 Atl. Rep., 304; Wood v. Dickey, 17 S. E. Rep., 818; Fry on Specific Performance, secs. 440, et seq.; Waterman on Specific Performance, secs. 196 and 198; Pomeroy on Specific Performance, secs. 162-3-5.

(2) That the option to terminate prevents specific performance: Marble Co. v. Ripley, 10 Wal., 339; Express Co. v. Railway Co., 99 U. S., 191; Sullivan v. Milliken, 113 Fed. Rep., 101; Brooklyn Base Ball Club v. McGuire, 116 Fed., 782; Rust v. Conrad, 11 N. W., 265; Sturges v. Galindo, 59 Cal., 28; Federal Oil Co. v. Western Oil Co., 112 Fed. Rep., 375; on appeal, 121 Fed. 674; Iron Age Publishing Co. v. Western U. Telegraph Co., 3 Am. St. Rep., 765; Clark v. Truitt, 55 N. E., 683; Alworth v. Seymour, 44 N. W., 1030; Buck v. Smith, 18 Am. Rep. 88; Bickford v. Davis, 11 Fed., 549; Andrews v. Andrews, 28 Ala., 432; Fry on Specific Performance, pp. 37-39; Waterman on Specific Performance, sec. 34; Pomeroy on Specific Performance, secs. 289-291.

(3) That the court will not compel the maintenance and operation of a railway: Port Clinton Ry. Co. v. Cleveland, etc., Ry. Co., 13 Ohio State, 544; McCann v. South Nashville, etc., Ry. Co., 2 Tenn. Chy., 773; Blanchard v. Detroit, etc., Ry. Co., 31 Mich., 43; Lattin v. Hazard, 27 Pac., 515; Atlantic, etc., Ry. v. Speer, 79 Am. Dec., 305; Pullman Co. v. Texas & Pac. Ry. Co., 11 Fed., 629; Ross v. Union Pacific Ry. Co., 1 Woolworth, 26; Strang v. Richmond, etc., Ry. Co., 101 Fed., 517; Danforth v. Philadelphia, etc., Ry., 30 N. J. Eq., 15; Pomeroy on Specific Performance, sec. 23; see also authorities cited under the next proposition.

The specific performance of the contract sued on can not be accomplished by a single decree, capable of execution at once, but will involve

the continuous performance of manifold duties upon the part of both parties for a period of twenty years. The constant supervision of the court for such period will be required, and thereby its powers be unduly taxed. For these reasons specific performance is not the appropriate relief, and should have been refused. Pomeroy on Specific Performance of Contracts, 307-312; Staunton v. Singleton, 59 Pac. Rep., 148; Fargo v. New York, etc., Ry. Co., 23 N. Y. Sup., 360; St. Regis Paper Co. v. Santa Clara Lumber Co., 67 N. Y. Sup., 149; Texas & Pacific Ry. Co. v. Marshall, 136 U. S.; 406; Berliner Gramaphone Co. v. Seaman, 110 Fed., 30, and note following case as it is reported in 49 C. C. A., 103; Iron Age Publishing Co. v. Western U. Tel. Co., 3 Am. St. Rep., 758; Louisville, etc., Ry. v. Bodenschatz, 39 N. E., 706; Electric Light Co. v. Mobile Ry. Co., 55 Am. St. Rep., 929; Blanchard v. Detroit, etc., Ry., 31 Mich., 44; Pullman Co. v. Texas & Pac. Ry., 11 Fed., 630; Richmond v. The Dubuque & S. C. Ry., 33 Iowa, 486; Bomer Bros. v. Canady, 55 L. R. A., 328; Siegel-Cooper Case, 58 Am. St. Rep., 753, and valuable note; Grape Creek Coal Co. v. Spellman, 39 Ill. Appeals, 630; Am. & Eng. Ency. Law, vol. 22, p. 1002.

The contract here sued on should not be specifically enforced, because its language is general and uncertain and it can not be definitely determined therefrom what it binds appellant to do, and because with reference to certain things to be done thereunder appellant is necessarily vested with a discretion as to when and how they shall be done. Pomeroy on Specific Performance, sec. 159; Waterman on Specific Performance, sec. 152; Frye on Specific Performance, sec. 361; Am. & Eng. Ency. of Law (1st ed.), vol. 22, p. 1006; Bracken v. Hambrick, 25 Texas, 412; Minnesota Tribune Co. v. Associated Press, 83 Fed., 357; Ikerd v. Beavers, 7 N. E., 327; Bomer Bros. v. Canaday, 55 L. R. A., 328; Blanchard v. Detroit, etc., Ry., 31 Mich., 44; Louisville, etc., Ry. v. Bodenschatz, 39 N. E. 706; Atlanta, etc., Ry. Co. v. Speer, 79 Am. Dec., 305; Staunton v. Singleton, 59 Pac. Rep., 148; Prusicke v. Ramzinski, 81 S. W. Rep., 773; Strang v. Richmond, etc., Railroad, 93 Fed., 75; Gates v. Gamble, 18 N. W., 631; Golson v. Thompson, 2 Wheaton, 336; Zeringue v. Texas & Pac. Ry. Co., 34 Fed., 243; Appeal of Ballou, 19 Atl., 304; Ecton v. Lexington, etc., Ry., 59 S. W., 864-866.

The judgment of the court is erroneous because it seeks to compel the defendant to give the plaintiff two-thirds of its outgoing tonnage, whereas, under the contract sued on, plaintiff is only entitled to two-thirds of defendants entire tonnage, and it is optional with defendant as to whether the greater part of this two-thirds shall come out of incoming or outgoing tonnage, and the court has no right to take away from defendant this option.

The judgment herein is erroneous because the same is expressed in general terms, and does not direct what this defendant shall do thereunder with such certainty and particularity as is necessary in this character of case. As the court was of opinion that the contract should be specifically performed it should have construed the contract, ascertained therefrom what the defendant was legally compelled to do, and have stated specifically the acts and things that the defendant should do, and when and how it should do them. As the matter now stands, the de-

fendant must at its peril construe the judgment of the court as to what it is required to do, and when and how it must do the same, and should its judgment prove faulty it is liable at any time in the future to be called to account for an erroneous construction by the stringent process of contempt. For this reason the judgment is clearly wrong.

*J. M. McCormick,* for defendant in error.—In order for a remedy at law to oust the jurisdiction of equity, and prevent the enforcement of equitable remedies, the legal remedy must be plain and adequate, or in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. Sumner v. Crawford, 91 Texas, 131; Watson v. Sutherland, 5 Wallace, 79; Gormley v. Clark, 134 U. S., 338; Kilbourn v. Sunderland, 130 U. S., 514; North v. Peters, 138 U. S., 281; Bay City Irr. Co. v. Sweeney, 81 S. W., 545.

A provision in a contract for liquidated damages does not prevent a specific enforcement of the contract, where it is apparent from the contract that the provision was inserted therein for the purpose of compelling its enforcement, and not as an alternative provision. McCurry v. Gibson, 54 Am. St. Rep., 178; Diamond Match Co. v. Roeber, 106 N. Y., 473; Watrous v. Allen, 57 Mich., 362; Ropes v. Upton, 125 Mass., 258; High on Injunctions, vol. 2, sec. 1175; Encyclopedia of Law, vol. 26, p. 68, and cases cited; Black v. Maddox, 104 Ga., 159; Brown v. Norcross, 59 N. J. Eq., 427; Reynolds v. Dreyer, 33 N. Y. S., 649; Whitney v. Stone, 23 Calif., 275; Chamberlain v. Blue, 6 Blackford, 491; Daily v. Letchfield, 10 Mich., 29; Gordon v. Brown, 39 N. C., 399; Hull v. Sturdivant, 46 Maine, 34; Hooker v. Pynchon, 74 Mass., 550; Hemming v. Zimmerschitte, 4 Texas, 159; Williams v. Talbot, 16 Texas, 3; Vardeman v. Lawson, 17 Texas, 15; Gregory v. Hughes, 20 Texas, 347; Bullion v. Campbell, 27 Texas, 655; Collier v. Betterton, 87 Texas, 441; O'Connor v. Tyrrell, 30 Atlantic, 1062; Amanda C. M. Co. v. People's P. M. Co., 64 Pac., 219; Crane v. Peer, 4 Atl., 72; Dooley v. Watson, 67 Mass., 414.

A provision in a contract providing for liquidated damages does not prevent the specific enforcement of such contract, where the enforcement of the liquidated damage clause at law would require a multiplicity of suits. Mills v. New Orleans Seed Co., 65 Miss., 391; Wheelock v. Noonan, 108 N. Y., 186; Mudge v. Salisbury, 110 N. Y., 417; Smith v. Gardner, 12 Oregon, 221; Port of Mobile v. Louisville & N. R. R. Co., 5 Am. St. Rep., 342; Beach Mod. Eq., secs. 22, 644, 697 and 737; Chicago & Northwestern R. R. Co. v. Dey, 35 Fed. Rep., 866.

In case it should be held that the provision for liquidated damages, payable annually, in the contract, is simply by way of a penalty, and is not in truth liquidated damages, and that a suit might be brought at law by the appellee immediately for all the anticipatory damages that would accrue during the life of the contract, the defendant not having sufficient property to respond to this amount of damages, the specific performance of the contract was properly decreed. Clark v. Flint, 22 Pick., 231; McNamara v. Home L. & C. Co., 105 Fed., 207; Am. & Eng. Ency. Law, vol. 26, p. 19.

The specific performance of a contract will not be denied because the

contract has some time to run, and the acts required to be done by the decree may cover as much as twenty years, where the acts to be done are of a purely ministerial nature, and do not require the exercise of personal taste, judgment or discretion. Whatever doubts as to the propriety of specifically enforcing such contracts may have once existed, have been set at rest by the more modern decisions, and it is now sufficient if the decree is complete in itself and disposes of the controversy, although it may be probable that supplemental proceedings to carry out the decree and make it effective under altered circumstances will afterward arise. Joy v. St. Louis, 138 U. S., 47; Franklin Telegraph Co. v. Harrison, 145 U. S., 462; Chicago, Rock Island & Pacific v. Denver, etc., Ry. Co., 143 U. S., 618; Prospect P. & C. I. R. Co. v. Coney I. & B. R. Co., 26 L. R. A., 612; Denver & R. G. Ry. Co. v. Alling, 99 U. S., 463; Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S., 564; Southern Ry. Co. v. Franklin & P. Ry. Co., 44 L. R. A., 302; Schmidt v. Louisville & Nashville Ry. Co., 38 L. R. A., 809; Chicago & A. Ry. Co. v. New York, etc., R. Co., 4 Fed., 516; Western U. Tel. Co. v. Union P. Ry. Co., 3 Fed., 429; New Orleans v. Tulane Educational Fund, 46 La. Ann., 861; Oakford v. Hackley, 92 Fed., 48; Wilson v. Furness R. Co., L. R. 13 Eq., 44; Union Pac. Ry. Co. v. Chicago, M. & St. P. Ry. Co., 51 Fed., 309; Central Trust Co. v. Wabash R. Co., 29 Fed. Rep., 549; South Alabama R. Co. v. Highland Ave. R. Co., 98 Ala., 400; Cumberland Valley R. Co. v. Gettysburg R. Co., 177 Pa. St., 519; Louisville R. Co. v. Mississippi R. Co., 92 Tenn., 681; Wolverhampton, etc., R. Co. v. London, etc., R. Co., L. R. 16 Eq., 433; Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y., 60; Am. & Eng. Ency. of Law, vol. 26, p. 95; Minneapolis R. Co. v. Cox, 76 Ia., 306; Lawrence v. Saratoga Lake R. Co., 36 Hun, 473; Grubb v. Starkey, 90 Va., 831; Jones v. Seeligman, 81 N. Y., 191; Gregory v. Ingwersen, 3 N. J. Eq., 199.

The rule as to certainty applied in cases of specific performance, is that the contract must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made. The contract sued on fully meets these requirements. Bay City Irrigation Company v. Sweeney, 81 S. W., 546; Lewis v. Gollner, 19 N. Y., 27; Joy v. St. Louis, 138 U. S., 43; Welsh v. Morris, 81 Texas, 160; 26 Am. & Eng. Ency. of Law, 32; Minneapolis Railway Co. v. Cox, 14 Am. St. Rep., 219; McCarty v. May, 74 S. W., 804; Ragsdale v. Mays, 65 Texas, 257; Hebert v. Mutual Life Ins. Co., 12 Fed. Rep., 807; Newsom v. Davis, 20 Texas, 419; Watson v. Baker, 71 Texas, 739; Ottumwa, etc., Ry. Co. v. McWilliams, 71 Ia., 164.

The fact that a contract is terminable by one of the parties seeking its specific performance, but not by the other, does not render the contract unenforceable in equity by injunction requiring specific performance. Welch v. Morris, 81 Texas, 160; Franklin Telegraph Company v. Harrison, 145 U. S., 466.

The court correctly decreed that the tonnage should be prorated to the appellee concurrently with its accrual. Bay City Irrigation Co. v. Sweeney, 81 S. W., 546; Rev. Stat. Texas, 4580; Joy v. Saint Louis, 138 U. S., 34; Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S., 564; Chicago, R. I. & P. Ry. Co. v. Denver, etc., Ry. Co.,

143 U. S., 618; Prospect P. & C. I. R. Co. v. Coney I. & B. R. Co., 26 L. R. A., 612.

The court properly construed the contract as one entitling the appellee to receive sixty-six percent of the outgoing tonnage, and sixty-six percent of the inbound tonnage. Faulk v. Dasheil, 62 Texas, 646; Jones v. Gilchrist, 88 Texas, 91; Swank v. San Antonio, etc., Ry. Co., 23 S. W., 249; House v. Faulkner, 61 Texas, 311; Miller v. Gulf Railway, 65 Texas, 663.

The decree is plain and simple, and sufficient in its terms to advise the appellant what it is required by the court to do. Bay City Irrigation Co. v. Sweeney, 81 S. W., 546; Franklin Telegraph Co. v. Harrison, 145 U. S., 466; Joy v. Saint Louis, 138 U. S., 16.

WILLIAMS, ASSOCIATE JUSTICE.—The defendant in error brought this action to compel specific performance by the plaintiff in error of a contract, between the latter and Henry M. Strong, of date February 15, 1901, which is as follows—numbering of paragraphs being done by the writer for sake of convenience:

" 'Whereas, on January 18, 1901, the board of directors of this company adopted a resolution authorizing the president and secretary to enter into a contract with Henry M. Strong, of Battle Creek, Mich., in form and substance as set forth in said resolution, which appears in full in the minutes of the said meeting of January 18, 1904, and

" 'Whereas, the sum of four thousand dollars ($4,000), provided as liquidated damages for breach of said contract by this company is not satisfactory to the said proposed contract unless the liquidated damages for breach thereof be fixed at the sum of $6,000,

" 'Therefore, resolved, that the said president and secretary be authorized to execute a contract with the said Henry M. Strong, in terms identical with the contract heretofore authorized as aforesaid, except that the liquidated damages be changed from four thousand dollars ($4,000) to six thousand dollars ($6,000), the contract hereby authorized being in words and figures as follows:

" 'The indenture made and entered into by and between the Lone Star Salt Corporation, a corporation under the laws of Texas, of the first part, and Henry M. Strong, of Battle Creek, Michigan, of the second part, on this 15th day of February, 1901, witnesseth:

" 'That, whereas, the first party has built and has now in operation a plant of works of a permanent character for the manufacture of salt, of great value, located at the town of Grand Saline, in Van Zandt County, Texas, which produces annually a large quantity of salt, which has to be moved to market by rail, and is in direct competition with other salt produced at works enjoying the benefit of several railways at point of origin, and.

" 'Whereas, there now exists only one line of railway at Grand Saline, which is detrimental to the interest of the said first party, and embarrasses it in its competition aforesaid in many ways, and

" 'Whereas, said second party, for himself and associates and the corporation to be by them formed, contemplates building another line of railway into Grand Saline, which will afford to the first party an addi-

tional outlet by rail for its product, provided said second party can be assured for a definite time of sufficient revenue to warrant the construction of said contemplated line.

"'1. Therefore, the said party hereby agrees with the said second party, and hereby covenants and (binds) itself, to furnish to said second party or its assigns, for transportation, for the full term of twenty years, sixty-six percent of all the tonnage moved by rail incident to the operation of its said works at Grand Saline, together with any renewals or extensions thereof, said term to begin to run from the date when the line of railway of said second party or his assigns shall be open for traffic to a point of intersection with some line of existing railway other than the Texas & Pacific Railway.

"'2. In consideration whereof said second party hereby agrees with said first party, and hereby covenants and binds himself and his assigns, to construct a line of railway into said town of Grand Saline, which shall extend thence to a point of intersection with some line of railway now existing, other than the Texas & Pacific Railway, which line so to be constructed shall be open for traffic to such point of intersection within twenty-four months from date hereof, which limitation of time is hereby declared to be of the essence of this contract.

"'3. And to receive promptly and promptly forward all freight tendered to it by said first party, and in respect to said freight to fully discharge all of its duties as a common carrier of freight, and to make to said first party on freight, or any part thereof, the lowest rate made, quoted or given by any common carrier or common carriers between the same points, on such freight, so that said Lone Star Salt Company, first party, shall never be compelled to pay more freight to the second party or his assigns for any service than it would have to pay for the same service to any other carrier or carriers.

"'4. It is further agreed between the parties hereto, that, inasmuch as the damages for a breach of this contract by the first party would be impossible of satisfactory estimation under the rules of law, the same are hereby liquidated at the sum of six thousand dollars ($6,000) per annum, and the said first party hereby agrees to pay to the second party or his assigns, the sum of six thousand dollars ($6,000) liquidated damages, for each year during said contract period in which said first party shall fail to tender second party or his assigns for transportation sixty-six percent of its tonnage into and out of Grand Saline, which damages shall be payable annually as they accrue.

"'5. It is further mutually agreed that this contract shall terminate without notice whenever the Texas & Pacific Railway and the proposed railroad shall cease to compete for business.

"'In witness whereof the parties hereto have signed these presents in duplicate on the day first written, and the first party has attached hereto its corporate seal.

"'Seal.

"'E. R. Blount, President; D. C. Earnest, Secretary; Henry M. Strong, Party of Second Part.'"

The defendant in error is the corporation formed for the construction of the railroad mentioned in the instrument, and is the owner of the

road constructed by it from Grand Saline to Hoyt, a point nine miles away on the Missouri, Kansas & Texas Railway, and of the rights given to Strong and his assigns by the contract. The cause of the action was the failure or refusal of the salt company to perform the obligation contained in the clause of the contract numbered one.

The district judge construed the contract as obligating the salt company to deliver to the railroad company the stipulated portion of its tonnage "as it accrues," and as including not only sixty-six percent of the outgoing tonnage, but also enough more of it to make sixty-six percent of it and the incoming tonnage, such as cooperage, fuel, etc., incident to the operation of the salt works, and entered a decree requiring the defendant to perform its obligation as thus construed. This decree having been affirmed by the Court of Civil Appeals, is now before this court upon writ of error.

The chief contention of the plaintiff in error is that the contract is not one to which, under the facts developed, the equitable remedy of specific performance is applicable; and, in support of the position, various reasons are advanced, only a few of which need be examined.

It is important first to see just what was the obligation assumed by the defendant, the salt company, and whether or not it was such as the courts below construed it to be. The promise is to furnish for transportation sixty-six percent of all the tonnage moved by rail, etc. At what times and in what quantities is the tonnage to be delivered for transportation? The contract does not answer by any of its express provisions. It does not stipulate that two tons, or two carloads, or two trainloads out of every three, which the defendant may get ready for shipment, shall be furnished to plaintiff, nor does it provide for the apportionment by days, weeks or months. If there is an obligation to deliver the tonnage as it accrues, it is an implied one to be found by construction.

It is true, as contended by counsel for plaintiff, that in decreeing specific performance, a court should, if necessary, determine by construction the legal effect of the agreement to be enforced and enforce it according to its true meaning and intent; but it is not competent for the court to add to the contract a promise which the party has not made. Blanchard v. Detroit, etc., R. R. Co., 31 Mich., 52. The argument is that the promise to deliver the freight as it accrues is necessarily implied from the nature of the agreement expressed, the situation of the parties and the objects which they intended to accomplish. The circumstances supposed to lead to this conclusion are that plaintiff's road is only about nine miles in length, running through an unsettled territory in which the traffic originating, besides that to be derived from the defendant's business, is not sufficient to justify plaintiff's enterprise; that the agreement to build the road was made in reliance mainly on the support to be received from defendant in carrying out its part of the contract; but the road, being in existence, must, in discharge of plaintiff's duties to the public, be continuously maintained with or without that support, at a profit with it, and at a heavy loss without it; that its business, which the parties must be held to have contemplated, consists in the running of trains at stated times for the purpose of hauling freight

tendered for shipment at those times, and that defendant's business also requires the constant and regular transportation, in and out, of its product and its supplies.

Conceding, for the present, that all these circumstances are to be considered, and that they are all that are to be considered in determining what the parties intended to accomplish by the contract, the trouble remains that the defendant has not bound itself to deliver the tonnage as it accrues as a means of securing to plaintiff the advantages mentioned. Specific performance is decreed to enforce the doing of that which the party himself has agreed to do, and not the doing of something which he has not agreed to do because it is deemed essential to the complete attainment of the benefits or advantages anticipated as results of the contract. Considerations such as those mentioned may have been inducements leading to the contract and may be regarded in determining the meaning of the language used by the parties; but what they agreed to do in order to bring to pass the desired results must be determined from their language, and their promises can not be extended or restricted by the court to make them contribute to the attainment of such results more fully than, as expressed, they might do. This is specially true in such a proceeding as this in which the sole basis of the decree must be the agreement of the party certainly specifying the thing he is bound to perform. Blanchard v. Railroad, supra. But the view thus presented of the purposes of the parties and the facts within their contemplation is partial and one sided. In the first place, the contract did not bind the plaintiff to construct the road over any specified route or to any specific point, but left it free to choose these for itself. The defendant itself owned and conducted an establishment and a business, which, if judged by the amount of its investment and of its returns, was of greater magnitude than that of the proposed enterprise of the plaintiff. It already had the advantage of one railroad, and what it desired was, not the exclusion of, but competition with, that road, in the shipment of its freights. In order to secure this it agreed to furnish two-thirds of its freights to the prospective road, but it did not surrender its liberty to conduct its own business as its interests might require to any greater extent than would necessarily result from the fulfillment of that agreement. It would seem obvious that the interpolation of the further stipulation that the sixty-six percent of the freight shall be furnished "as it accrues" would impose a much larger restriction upon it in the management of its business than that involved in the simple obligation expressed, the purpose of which was to give to the plaintiff the earnings from the transportation of two-thirds of each year's tonnage. The parties must have expected that orders for salt might come to defendant from points reached by the Texas & Pacific Railway, the prompt filling of which might be better accomplished by shipment over that road than over that to be built by the plaintiff; that at any given time such calls upon defendant's business might demand the shipment over that road of more than one-third of the tonnage ready for shipment. The agreement to surrender its discretion to so manage its sales and shipments as best to promote its interests ought not to be raised by any implication but the clearest, and

no such implication is necessary to the carrying out of the promise stated, which can be fully satisfied without it. The parties themselves, when, in the clause of the contract numbered four, they provided for the payment of damages "for each year in which said party of the first part shall fail to tender to the second party or his assigns, sixty-six percent of its tonnage into and out of Grand Saline," named a period of time over which any inquiry as to performance vel non should extend, which certainly indicates that there was no intention that a failure to give the stated part of the tonnage ready for shipment at any particular time should be treated as a breach of the obligation. Further evidence of this is found in the fact that the instrument expresses the same obligation with reference to incoming and outgoing tonnage. How could commodities purchased by defendant at distant points and there delivered to and routed by other carriers be so divided that two-thirds of each shipment should eventually pass over plaintiff's road? The impracticability of the thing is obvious. The court below saw the difficulty and endeavored to obviate it by requiring the delivery of so much of the outgoing tonnage as, together with such of the incoming tonnage as plaintiff received, would make up sixty-six percent of the whole. Whether or not this would be a permissible way of enforcing a contract expressly giving to the carrier the right to such a portion of each shipment of outgoing and incoming freight, when the defendant was found to be unable to comply literally with respect to the latter, is not the question. The point is that the same stipulation with reference to each kind of freights is not that kind of an agreement, but is an indication that such an undertaking was not in the minds of the parties when the contract was made.

We first determine this question as to the construction of the contract, because the assumption that it binds the defendant to contribute to the support of plaintiff's road and save it from loss, by the regular and continuous delivery of the tonnage as it accrues, forms the basis of the plaintiff's further claim that damages for the breach of the contract would not afford an adequate remedy, and that the case is therefore a proper one for the equitable relief sought. The conclusion that the contract does not bear the construction put upon it necessitates not merely the reversal of the decree, but the denial of any decree for specific performance. It affirmatively appears that evidence as to the amount of defendant's tonnage shipped by rail, the freight rates upon it, and all data needed for the measuring of the damages to result from breaches of the contract are easily accessible and can always be obtained; and the equity claimed by plaintiff, as peculiar to its case and as affording ground for the decree sought, consists wholly in the alleged fact that plaintiff must operate its road in any event and needs the regular contribution of custom from the defendant, in the manner claimed, to enable it to do so without loss. Since the contract does not bind the defendant to furnish the freight as alleged, the argument based on the assumption that it does, must fall; and the case stands as one in which the plaintiff has the right to compensation in money for the loss of the earnings in money which it would receive if the contract were performed.

Against the defendant's contention that the contract only binds it to furnish sixty-six percent of each year's tonnage, it is argued that this would leave it in its power to defeat the plaintiff's right by tendering freight at such times and in such quantities as to make it impracticable or unduly burdensome for the plaintiff to transport it.   It is not our purpose to go further in the construction of the agreement than is necessary to the disposition of the present controversy.   The question whether or not the defendant might, by conduct such as is supposed, commit a substantial breach of its obligation entitling plaintiff to damages may arise in other actions and it should not be prejudged.   If it be conceded that such might be the case, no support is found in that proposition for a decree for the specific performance of such an agreement as we find this to be.   For it follows from what we have said, that defendant is at liberty to manage its business as its exigencies may require, restricted only by its obligation to the plaintiff, which is to furnish the stipulated percentage of its tonnage, but not at any stipulated time, nor in any stipulated quantities.   It is impossible for a court of equity, by any decree it might render in advance, to define the exact things the defendant, under any given circumstances, must do in order substantially to fulfill such an obligation.   Any attempt to enforce specific performance of it would require nothing less than a constant supervision by the court of the defendant's management of the transportation of its commodities under the constantly changing circumstances and conditions from time to time affecting it, and this, too, in a case in which adequate compensation in damages may be made.   The recovery of compensation might, to be sure, require a number of suits, but the vexation resulting from their number would probably be small compared to that which would likely attend proceedings attempting to enforce specific performance of a contract which does not itself furnish a definite basis therefor.

The questions discussed by counsel as to the nature of the provisions in the contract attempting to liquidate the damages—that is, whether it may be given that effect, or must be treated as a penalty—and the further question whether or not, if it were conceded to be of the former kind, it would by itself necessarily preclude the granting of the equitable relief sought if the case were otherwise a proper one for it, we need not decide, for the reason that the damages actually to result from a breach of the contract, whether liquidated or not, may be ascertained with certainty and recovered so as to compensate plaintiff for any loss sustained.   The reason why it is urged that the sum named should be held to be a penalty and not stipulated damages, although the parties show their intention to make it such, is that it is, in terms, payable for the smallest breach of, as well as for a total failure to perform, the contract in any one year.   Whether or not this fact of itself shows the stipulation to be a penalty, or whether the provision makes the named sum payable as liquidated damages only, for an entire failure to perform for a year, leaving partial failures unprovided for, are also questions which we deem it improper to prejudge, as they may arise in other cases in which the plaintiff may be entitled to relief in damages.   Differing views upon the question suggested are expressed

in the following cases: Watts v. Sheppard, 2 Ala., 425; Heatwole v.
Gorrell, 35 Kan., 692; Shute v. Taylor, 5 Met., 67; Hoag v. McGinnis,
22 Wend., 163; Gower v. Saltmarsh, 11 Mo., 271; Hamaker v. Schroers,
49 Mo., 408; Wibaux v. Grinnell, 9 Mont., 163; Colwell v. Lawrence,
38 Barb., 648; Cook v. Finch, 19 Minn., 413; Lyman v. Babcock, 40
Wis., 503; Charrington v. Laing, 6 Bing., 242; Ex parte Pollard, 2
Lowell, 411.

While we have thought it proper to put the decision upon the con-
struction of the contract which is held to be the true one, we may say
that the same result would follow either construction. The injunction
to the defendant to deliver the freight "as it accrues" finally settles
nothing, amounting to no more than a command to carry out the con-
tract, leaving undetermined the particular acts to be done to constitute
performance. In what quantities and at what intervals of time is the
tonnage to be furnished as it accrues? How is the defendant's action
in executing the order to be affected by the condition of plaintiff's busi-
ness, existing at different times in respect of its readiness or unreadi-
ness to receive and promptly transport? How will the defendant, at
any given time, be enabled to determine how much of its outgoing
freight must be delivered, as it accrues, to compensate for any defi-
ciency in the percentage of incoming freight received and carried by
plaintiff? These and many other questions that might be put expose
the futility of the attempt to define in advance the course of conduct
the defendant must pursue in order to obey the mandate of the court.
The truth is, the contract is of such a nature that, under any con-
struction, the remedy of specific performance can not successfully be
applied to it. What would constitute a violation of the decree could
only be determined by future action of the court in further proceedings
to define its scope and meaning and to enforce it.

The remarks of Lord Eldon, in Collins v. Plumb, 16 Ves., 460, in
which specific performance was sought of a covenant by which the de-
fendant had agreed that he would not sell water from a well to the
prejudice of the other party, show the impropriety of rendering de-
crees which really leave the controversy open. Said the Lord Chancel-
lor: "Observe the situation of the defendant. Upon every application
to commit for breach of the injunction, the only mode of giving effect
to the decree, a trial must in each instance be directed, to ascertain
whether that act, which might be done without injury to the plaintiffs,
has been done without injury. In a case of so great inconvenience,
therefore, the plaintiffs not being able to enforce the injunction, the
only real object, without a trial upon every act, and not having thought
proper to reserve this well, but resting upon this covenant, there is
the covenant; and they must make what they can of it." See, also,
Gervais v. Edwards, 2 D. & W., 80; Blanchard v. Railway, supra;
Caswell v. Gibbs, 33 Mich., 331.

Indeed, it is generally held that the mere fact that a decree for spe-
cific performance will require the constant superintendence by the
court of the execution of a contract continuing through a long period
of time, is sufficient reason for denying the relief. Blackett v. Bates,
1 Ch. App., 117; Pomeroy's Eq. Jur., 2773, and notes.

The objection applies to the contract under consideration in full force because of the nature of the duties which it puts on both parties. It exacts, not only of the defendant, but of the plaintiff also, the performance of continuous duties, the exact manner of doing which could not well be prescribed in advance. A court of equity, when it requires specific performance, requires it of both sides, so far as anything is left to be performed. Gervais v. Edwards, supra. While the defendant is bound to deliver the tonnage for shipment, the plaintiff is bound to promptly receive and forward it, and to regulate its freight charges according to the terms of the contract. Reciprocal obligations and duties are imposed, to the proper and adequate performance of which on both sides the court would have to see, were specific performance decreed. In other words, it would be necessary, not only to regulate the conduct of the defendant in furnishing tonnage, but that of plaintiff in receiving and forwarding it, and in fixing its freight charges. The task thus assumed would be, not merely the enforcement of plaintiff's legal duty to operate its railroad—a task such as some courts have declined and others, under circumstances sufficiently strong, have assumed (Ross v. Union Pac. Co., 1 Woolworth, 26; Port Clinton, etc., Ry. Co. v. Cleveland, etc., Ry. Co., 13 O. St., 544, and authorities cited; Prospect, P. & C. I. R. R. Co. v. Coney I. & B. R. R. Co., 144 N. Y., 152; Southern Ry. Co. v. Franklin & P. Ry. Co., 44 L. R. A., 297)—but the enforcement also of the reciprocal obligation which it has assumed to defendant. This would make it necessary that the court look to the operation of the two businesses in connection with and with reference to each other, so that each party should be required to perform the duties and receive the benefits contracted for.

It is wholly impracticable for a court to thus assume the direction of the execution of such a contract. In Blackett v. Bates, supra, it was said "that the court had no means of enforcing the performance of daily duties during the term of the lease; that it could do nothing more than punish the party by imprisonment or fine in case of failure to perform them, and might be called on for a number of years to issue repeated attachments for default."

No authority has been cited in which a court has undertaken the specific performance of agreements like these, and, if one could be found, we would not be inclined to follow it. The objection is not merely that, if performance were decreed, it would take years for the party, acting under a definite decree, to complete it. That might not by itself be an insuperable objection. The objection here is that the court can only order performance in such general terms as to really settle nothing, leaving the parties without any certain and practical rule to follow, and making necessary further agreements on their part, or further applications to the court from time to time for decisions of controversies arising.

It would be useless to review at length the authorities relied on to sustain the decree. We have endeavored to so state the objections we see to it as to show wherein the case differs from all well-considered ones in which performance was ordered. Those chiefly relied on are: Joy v. St. Louis, 138 U. S., 34; Rock Island Ry. v. Rio Grande Ry.,

143 U. S., 618; Union Pac. Ry. Co. v. Chicago & R. I. Ry. Co., 163 U. S., 564; Franklin Tel. Co. v. Harrison, 145 U. S., 462; Denver, etc., Railway v. Alling, 99 U. S., 463; Prospect P. & C. I. Ry. Co. v. Coney I. & B. R. R. Co., 144 N. Y., 152; Southern Ry. Co. v. Franklin & P. Ry. Co., 44 L. R. A., 297. These cases have little other resemblance to the one before us than that most of them were actions for specific performance, in which the principles governing the remedy were discussed and applied. The effect of all of those in the Supreme Court of the United States, except the case of the Telegraph Company v. Harrison, was to require the defendants to admit the plaintiffs to the use of tracks, terminals or rights of way, or other property, to which use the plaintiffs were entitled, either by contract or by law. It was necessary only for the courts to require that the defendants allow the plaintiffs to exercise the rights to which they were entitled under the law or the contract. The courts did not have to direct the management of the businesses of the parties, except in the arrangement of some details for which the contracts furnished the rule. The Telegraph case was of the same nature. The contract bound the defendant, who had purchased a telegraph line from plaintiffs, to maintain upon the poles in their line a wire which the plaintiff was to have the use in sending messages. The decree merely required the keeping up of the wire for plaintiff's use. In the New York and Virginia cases, the defendants had bound themselves to operate lines of railroads, and had done so, but were threatening to abandon the operation of them. They were required to continue the operation. What we have said shows the essential differences between all of these cases and the present one. Besides those differences, most of the cases referred to were distinguished by the presence of large public interests to be subserved by specific performance and the absence of any adequate legal remedy.

The subject need not be pursued further. The difficulties pointed out seem to us to be insuperable, for which reason the judgment must be reversed and judgment here rendered for defendant.

*Reversed and rendered.*