# IN THE SUPREME COURT OF TEXAS

No. 20-0525

IN RE REPUBLICAN PARTY OF TEXAS, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

JUSTICE DEVINE, dissenting to the denial of the petition's dismissal for want of jurisdiction.

At stake in this simple breach-of-contract dispute is a vital component of our nation's electoral process. Under a contract it had with the City of Houston, the Republican Party of Texas planned on hosting an in-person convention at the City's convention center to choose its presidential electors. But based on a last-minute decision, the City's mayor scrapped those plans. To hold the City accountable for the promises it made, the Republican Party tried to enforce its contract. Given the gravity of the issues, it ultimately sought relief from this Court. Due to a mistaken understanding of our jurisdiction, however, the Court dismisses the petitions. The result? A subordination of both contractual and constitutional rights, and irreparable damage done to the exercise of "one of the most solemn trusts in human society"[1]—choosing who leads the country.

I would grant the Relators mandamus relief and hold the City to its word.

## I

Next week, the Republican Party of Texas plans on hosting its biennial state convention. At this convention, the Party will choose the electors who will vote on behalf of all Texans to elect

---

[1] Samuel Adams, Essay in the Boston Gazette, April 16, 1781.

the next President and Vice President of the United States. Years ago, in preparation for the convention, the Republican Party contracted with Houston First Corporation to secure the use of the George R. Brown Convention Center. The convention was originally scheduled to take place in May of this year. But due to the various emergency orders related to the coronavirus, the parties amended their agreement at the end of March to ensure use of the Convention Center for July 13 to July 18, 2020.

Like many standard commercial agreements, the contract between Houston First and the Republican Party has a force-majeure clause—a clause that permits parties to suspend their contractual obligations if an event beyond their control renders performance impossible. The parties' contract here specifically defines a "Force Majeure" event as, among other things, "epidemics in the City of Houston." Up until a few days ago, Houston First and the Republican Party had been in constant contact with one another in order to implement safety measures that would prevent the spread of the coronavirus. These measures included developing floor plans that promoted social distancing, frequently cleaning high-touch surfaces, and completing training offered by the CDC and the local health department.

Leading up to the Republican Party's convention, Mayor Turner began expressing strong concerns about Houston hosting the event. In fact, as the convention drew closer, Mayor Turner indicated that he would begin enforcing his orders prohibiting large gatherings. As the Relators note, the Mayor's warning of enforcement stands in stark contrast to his previous personal participation in large in-person protests just weeks before. Then, on July 7th, Mayor Turner sent a letter to the Republican Party requesting that it cancel the in-person component of its convention. Having already undergone all the strenuous safety measures the City had requested it complete, the Republican Party voted to proceed with the convention in person.

Unsatisfied with that outcome, Mayor Turner instructed his legal team to find a way out of the convention contract. To that end, Mayor Turner stated that First Houston would review the contract and "exercise those provisions" that would allow them "to cancel this agreement" and "cancel this convention." Expectedly, Houston First sent a letter to the Republican Party the next day stating that it was canceling the contract. The letter cited the contract's force-majeure clause as the basis for the cancellation.

The Republican Party and other plaintiffs thereafter filed suit in Harris County, naming the City of Houston, Mayor Turner, Houston First Corporation, and Houston First's president as defendants. The petition alleged, among other things, breach of contract. As a remedy, the Republican Party requested a temporary restraining order, a temporary injunction, and a declaratory judgment. The district court denied these requests. The Republican Party then filed a mandamus petition in this Court, asking that we correct the district court's abuse of discretion and grant the requested emergency relief—namely, compelling the defendants to perform their contractual obligations.

## II

Under section 273.061 of the Texas Election Code, we have the power to "issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention . . . ."[2] The Republican Party asks that we do precisely what the statute permits: compel Houston First and the other defendants to comply with their legal obligation of hosting the convention. The Solicitor General, on the other hand, believes exercising mandamus authority here is inappropriate. Because "it is far from clear that a private contractual

---

[2] TEX. ELEC. CODE § 273.061.

obligation is a 'duty imposed by law' within the meaning of that provision," the Solicitor General posits, the Republican Party has "not demonstrated a clear entitlement" to mandamus relief.

But this view is mistaken. Tellingly, the Solicitor General cites no on-point caselaw in support of his narrow reading of the Election Code. His interpretation instead rests on distinctions we have made in the past between tort law and contract law. *See, e.g.*, *Sw. Bell Tel. Co. v. DeLaney*, 809 S.W.2d 493, 494 (Tex. 1991) (noting that "a duty created under [a] contract" is distinct from a "duty imposed by law" for tort obligations). But I see no reason why distinctions of that kind apply here. Negligence per se and other tort-related duties, as contrasted with the common law of contracts, offer no meaningful help in interpreting a statute governing elections.

A more sensible resource to determine the meaning of statutory words in this instance, then, is a dictionary. Indeed, in our own statutory-interpretation jurisprudence we have extensively relied on dictionaries to determine the plain and ordinary meaning of words.[3] And when one consults the most recently published and authoritative dictionary for the definition of "legal duty" (a shorthand for a "duty imposed by law"), one would find that it states the opposite of what the Solicitor General urges us to adopt. According to Black's Law Dictionary, a "legal duty" is a "duty arising *by contract* or by operation of law."[4] That is precisely what we have here. Houston First has a "duty arising by contract"—or a "duty imposed by law"—to host the Republican Party's convention at the George R. Brown Convention Center. A plain reading of the Election Code thus supports our power to compel via mandamus any failure to fulfil that duty.[5]

---

[3] *See, e.g.*, *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014); *Cadena Commercial USA Corp. v. Tex. Alcoholic Bev. Comm'n*, 518 S.W.3d 318 (Tex. 2017).

[4] *Legal duty*, BLACK'S LAW DICTIONARY 638 (11th ed. 2019) (emphasis added).

[5] The Solicitor General also argues that if contractual duties are duties within the scope of the Election Code, our mandamus jurisdiction would expand to include trivial cases—for example, a delegate who sues an airline because, after canceling his or her flight to the convention, the airline refuses to refund the ticket despite a contractual duty to do so. Even assuming this to be true, section 273.061 says this Court "may" issue a writ of mandamus in appropriate

An ordinary understanding of that phrase, too, supports this conclusion.[6] Lawyers and laypeople alike would be surprised to learn that their contractual duties are not "imposed by law." Contracts are, after all, legal documents. A party injured, or facing imminent injury, by a contract breach can of course go to a court of law to compel performance of contractual duties. It would be strange, then, to characterize such duties as ones not imposed by law. Simply put, if the duty to honor a contract isn't "imposed by law," then what is it imposed by?

Moreover, an essential purpose of the Election Code's grant of mandamus jurisdiction to this Court is to ensure the smooth functioning of the electoral process against last-minute threats to the integrity of that process. We should not thwart this purpose by going out of our way to adopt a cramped view of what qualifies as a duty imposed by law. The practical reality is that running an election and associated political conventions involves a host of legal obligations imposed upon many private and public parties by the constitution, statutes, and contracts. Violation of contractual duties related to elections can threaten the integrity and proper functioning of our electoral process just as violations of statutory duties can. Typical breach-of-contract remedies may be inadequate to protect fundamental aspects of the electoral process that depend on contracts for their functioning. This is one reason the statute gives this Court the unusual authority to issues a writ of mandamus against private parties. As I understand it, section 273.061 permits this Court to use the writ of mandamus to ensure that every party who has voluntarily, by contract,[7] taken on essential

---

cases. It's no secret that we have significant discretion in exercising our mandamus jurisdiction, and this Court is under no obligation to take up the mundane contract disputes about which the Solicitor General worries, even if they technically fall within the statute's ambit. Mandamus is an extraordinary remedy that would seldom be available in contract disputes, but that is no reason to conclude that contractual duties are not "imposed by law."

[6] *See Bostock v. Clayton Cty.*, No. 17-1618, 2020 U.S. LEXIS 3252, 2020 WL 3146686, at *163 (U.S. June 15, 2020) (Kavanaugh, J., dissenting) (explaining that courts "must heed the ordinary meaning of the *phrase as a whole*") (emphasis in original).

[7] The Court wisely opts not to follow the Solicitor General's tort–contract distinction when it comes to interpreting section 273.061 of the Election Code. For different reasons, however, the Court errs by relying on a definition of "law" found in section 1.005(10) of the Election Code. According to that definition, "law" means "a

obligations to facilitate elections and conventions can be held to its promises. In short, I see no obstacle to our jurisdiction in this dispute.

## III

Because the Election Code gives us the authority to compel performance of contractual duties in connection with the holding of a political party convention, the next question is whether Houston First has breached its contract with the Republican Party.

In support of its argument that it has not, Houston First quickly points to the force-majeure clause in the contract. That clause states:

> Either party may terminate this Agreement or suspend its obligation thereunder due to Force Majeure to the extent that such occurrence is beyond the reasonable control of the party whose performance is effected on such affected party's giving notice and full particulars to the other party of such Force Majeure as soon as practicable, but no later than 7 calendar days after the occurrence of the cause relied upon.

Once the coronavirus pandemic arrived in Texas in March of this year, the parties added the following amendment to the clause:

> For the avoidance of doubt, the parties acknowledge and agree that the following occurrences are within the scope and definition of Force Majeure under Section 12 of the Agreement: Pandemics affecting Houston or preventing use and occupancy of the Facility; and orders materially and substantially restricting the size of gatherings at the Facility issued by the Mayor of the City of Houston, Governor of the State of Texas, or the President of the United States, issued within 30 days of the Event.

In other words, the parties agreed that, in the event of a force-majeure occurrence, the performing party could cancel its obligation so long as it gave the other party notice within 7 days of the force-majeure occurrence relied upon by the canceling party. After extensively working with the

---

constitution, statute, city charter, or city ordinance." But exclusive reliance on this definition overlooks the fact that Relator's *constitutional* rights are inextricably bound up in the City's contract. The City, in other words, cannot merely label its failure a contractual one to escape our jurisdiction.

Republican Party to host a safe convention, Houston First invoked this clause on July 8th. But I'm unpersuaded that Houston First could so conveniently rely on this force-majeure clause.

First, the force-majeure clause contemplates that an "occurrence" take place. By its very nature, an "occurrence" is a distinct, objective event.[8] Thus, to invoke the clause, a party needs to be able to point to a distinct, objective event that triggers the clause's applicability, and then, "no later than 7 calendar days after the occurrence," give the other party notice of the cause. Looking at Houston First's invocation of the clause in this context, it's unclear what specific event it relies on. The coronavirus pandemic has been an *ongoing* public-health concern. For purposes of the force-majeure clause, it has not been—and cannot be—boxed in as a single, distinct occurrence.

A reasonable reader of this force-majeure clause would thus be puzzled on how to follow the seven-days' notice requirement if one cannot pin down the occurrence to a specific calendar day. Applied here, when should have Houston First given notice of its cancelation "after the occurrence of the cause relied upon"? Once Houston had 100 confirmed cases? 200? 10,000? It's impossible to know how to comply with the contract given how the clause is written. In this case, Houston First canceled the contract on July 8th. Assuming it complied with the seven-days' notice requirement, something must have happened on or after July 1st that triggered the clause's applicability. I can find no such triggering event in its briefing. Instead, the only clear "occurrence" that purportedly triggered the clause's applicability is Mayor Turner's insistence on canceling the convention. But surely the Mayor's day-to-day feelings about public health and the wisdom of hosting an in-person convention cannot be the triggering force-majeure condition. I'd like to think that force-majeure events, if they have any meaning at all, transcend personal whim and subjective

---

[8] *See Occurrence*, BLACK'S LAW DICTIONARY 1299 (11th ed. 2019) ("Something that happens or takes place . . . .").

notions. Such clauses cannot be used as a contractual *deus ex machina*—a mere pulled-out-of-the-pocket "*gotcha!*" card.

On top of the impossibility of applying the force-majeure clause the way Houston First has done it here, there is another sense in which "impossibility" is at play. In their contract, Houston First and the Republican Party do not specify as to whether the force-majeure event must make performance impossible or merely difficult. In the absence of that specification, we should rely on the general understanding of the term. As a scholar on contracts has described "force majeure," it is an event that "create[s] a contractual impossibility due to an 'Act of God.'"[9] Thus, Houston First would need to show that the pandemic has created a "contractual impossibility." I'm not convinced it has.

In all the time leading up to performing its contractual duty, Houston First was coordinating with the Republican Party to implement safety measures for hosting the state convention in the Convention Center. Its conduct thus indicated that there were indeed ways to perform the contract without having to resort to outright termination. Catering to public-health concerns can certainly make performing a contract difficult. It may require additional effort, as it has already shown, to make the venue safe for both its staff and the attendees. And this effort, as it has already shown, was difficult—but not impossible. I am thus unconvinced that Houston First can exclusively rely on a watered-down version of force majeure.

For these reasons, I would hold that Houston First has not shown appropriate reliance on the contract's force-majeure clause and has thus breached its contract with the Republican Party.

---

[9] Arthur Corbin, *Corbin on Contracts*, § 1324 (1962); *see also Perlman v. Pioneer P'ship*, 918 F.2d 1244, 1248 (5th Cir. 1990).

## IV

Having established that mandamus relief is proper here and that Houston First has breached its contract, the last issue is whether the Republican Party is entitled to the remedy it requests: Houston First's specific performance. I think it is.

Specific performance is a unique form of an injunction that orders a defendant to perform its contract. "To be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue its part of the agreement."[10] Specific performance is an equitable remedy that, like all other equitable remedies, is awarded only when there is no adequate remedy at law.[11]

The Republican Party meets these requirements. The Republican Party has tendered performance: paying non-refundable deposits to reserve the Convention Center as its venue. And there is no question that money damages, a legal remedy, is inadequate in redressing its impending injury. Money cannot replace the Republican Party's preferred method by which it chooses its electors. Indeed, this convention is vital to the democratic process itself and has deep constitutional underpinnings. As the U.S. Supreme Court has said, the Constitution "confers on political parties [the right] to structure their internal party processes and to select the candidate of the party's choosing."[12]

And at this convention, of course, the Republican Party will choose its presidential electors. With the nation's highest office at stake, we are not in a position to question how party leaders desire to run this important business. Offering the retrospective remedy of money damages as a

---

[10] *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008).

[11] *See Lone Star Salt Co. v. Tex. S. L. R. Co*, 90 S.W. 863, 865–66 (Tex. 1906).

[12] *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203 (2008).

substitute, then, would belittle the monumental consequences of the upcoming election. Thus, at a minimum, specific performance should be available to prevent Houston First from locking the Convention Center doors.

<p style="text-align:center">* * * * *</p>

In sum, I would not allow Houston First to put its contractual obligations second. Exercising our mandamus jurisdiction here to compel Houston First and the other defendants to host the Republican Party's convention is not only appropriate—but necessary—to preserve the sanctity of contract and our elections. Today the Court errs by refusing to uphold these values. And this refusal, I'm afraid, will have ripple effects far beyond this misguided jurisdictional punt. I respectfully dissent.

<div style="margin-left:45%">
_____

John P. Devine
Justice
</div>

**OPINION DELIVERED:** July 13, 2020