## BECKHAM v. MUNGER OIL & COTTON CO. (No. 7522.)

(Court of Civil Appeals of Texas. Dallas. April 29, 1916.)

1. INJUNCTION ☞57 — CONTRACTS — USE OF PREMISES.

Whether a court of equity will grant an injunction the effect of which is to compel the specific performance of contract depends on the same principles as govern a direct decree for a specific performance, so that, when it appears on a bill for specific performance and an injunction that plaintiff is not entitled to a specific performance, he is not entitled to an injunction against the breach of the contract.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 111–113, 130; Dec. Dig. ☞57.]

2. SPECIFIC PERFORMANCE ☞75—REMEDY—SUIT FOR DAMAGES.

In a suit to enjoin defendant from removing a gin plant and machinery from premises purchased of the plaintiff, and to enforce their contract, whereby the defendant, as a part consideration of the sale, was to maintain the plant, and whereby plaintiff covenanted that no other gin should be constructed upon his 600-acre farm, where specific performance would require the court's supervision for a long time, it will not be decreed, but the court will leave the parties to their remedies at law.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 210; Dec. Dig. ☞75.]

Appeal from District Court, Limestone County; A. M. Blackmon, Judge.

Suit by J. J. Beckham against the Munger Oil & Cotton Company. Judgment for defendant dissolving a temporary injunction, and plaintiff appeals. Affirmed.

J. E. Bradley, of Groesbeck, and W. M. White, of Mexia, for appellant. C. S. Bradley, of Groesbeck, A. B. Rennolds, of Mexia, and Coke & Coke, of Dallas, for appellee.

RAINEY, C. J. Appellant brought this suit to enjoin appellee from removing a gin plant and machinery from certain premises and to enforce a certain contract entered into by them. The appellant alleged that he had maintained and operated a gin at said place for many years prior to the date of his contract with defendant, that same was necessary for the welfare of his farm, which consisted of about 600 acres, and that he would not have sold said gin site, gin, nor machinery to defendant but for his contract and agreement to maintain and operate same, as agreed in said contract, and that the purchase of said gin site and plaintiff's business and good will were the main inducements for defendant making said purchase and entering into said contract. Plaintiff further alleged that defendant was then violating the terms of said contract, and was removing said gin and gin machinery off of the premises of plaintiff, and that he would sustain irreparable loss and injury unless an injunction should be granted. A temporary writ was granted on the 27th day of May, 1915, and on the 24th day of June, 1915, a motion to dissolve was filed by appellee, which motion was sustained, and said judgment rendered dissolving said injunction, from which this appeal is taken.

The contract entered into between the parties and which appellant seeks to enforce is as follows:

"The State of Texas, County of Limestone.

"Whereas, J. J. Beckham, of said state and county, has this day sold to Munger Oil & Cotton Company, a private corporation duly incorporated and existing under and by virtue of the laws of the state of Texas, of said state and county, a certain parcel of land described in said Beckham's deed of this date; and whereas, said land and all appurtenances thereto belonging has been conveyed to said Munger Oil & Cotton Company for gin purposes and for the purpose of buying and selling unginned cotton and cotton seed thereon; and whereas, said tract or parcel of land this day so conveyed by said J. J. Beckham to said Munger Oil & Cotton Company is a part of a 600-acre farm now owned by said J. J. Beckham: Now, therefore, as a part of the consideration of said sale, the said Munger Oil & Cotton Company hereby binds itself and its assigns to construct and maintain upon the land this day conveyed as aforesaid by said J. J. Beckham a gin of the latest improved plan, and consisting of four gin stands, and to use said lands and premises for the business of ginning, buying, and selling cotton and cotton seed only. And as a part of the consideration of the aforesaid sale the said J. J. Beckham hereby covenants and agrees, for himself, his heirs and assigns, that no gin shall be erected or constructed on any part of his 600 acres of land, from which the land this day conveyed to said Munger Oil & Cotton Company has been taken, for a period of 15 years from this date, and that he, the said J. J. Beckham, his heirs and assigns, shall not engage in the business of buying and will not buy cotton nor cotton seed on said 600 acres of land nor in the vicinity of said Munger Oil & Cotton Company's said premises for said period of time, and that he, the said J. J. Beckham, his heirs, executors, and administrators, shall at all times hereafter save harmless the said Munger Oil & Cotton Company and its assigns of and from all actions, costs, and damages for and by reason of the maintenance of the hereinafter mentioned tanks and by reason of water which may flow therefrom.

"The said Munger Oil & Cotton Company further covenants and agrees to maintain the dam of the east tank now situated on the land this day conveyed as aforesaid to a height sufficient to cause the water to back or flow into the west tank there situate, and to overflow said west tank at the northwest end of the dam thereof.

"It is further covenanted and agreed by and between the parties hereto that the said J. J. Beckham, his assigns, and the tenants on his farm, shall have free use of the water afforded by said west tank for their live stock and for domestic purposes, but no hogs shall be allowed to remain within the inclosure surrounding said west tank, and the right of ingress and egress over and across the dam of said west tank is hereby reserved by said J. J. Beckham and granted by said Munger Oil & Cotton Company for the purposes aforesaid.

"Witness our hands this first day of April, A. D. 1913.     J. J. Beckham.

"Munger Oil & Cotton Company,
"Per H. M. Munger, Pres."

A short while after said contract was entered into appellee took possession of the land.

comprising several acres, mentioned in the contract, built thereon a ginhouse, placed therein a four-gin outfit, and operated it for two seasons at a loss both seasons. Just after appellee installed its said plant an association composed principally of farmers in that neighborhood erected a gin plant within a few miles of appellee's plant, which controlled the greater part of the patronage, and rendered the operation of two ginning plants in that neighborhood profitless, as the community would not support two gins. Appellant owned a farm of about 600 acres, out of which he sold to appellee the part on which to erect the gin plant. He also had a small store building used for general merchandise which was rented at the time, and the business carried on therein was a convenience for his tenants and the community generally. At the time the petition for injunction was filed the appellee had moved part of the machinery and intended to move all of the plant with the view of not operating the gin plant in that locality any longer.

[1] The appellee contends, in effect, that this suit, while in form it is for an injunction in effect is one for specific performance, and under the circumstances the appellant has a remedy in damages, and an injunction will not lie. We concur in this contention. The effect of an injunction would be to compel the carrying out of the contract which forms the basis of this suit.

In Am. & Eng. Enc. of Law (2d Ed.) vol. 26, pp. 15, 16, it is said:

"Whether a court of equity will grant an injunction the effect of which is to compel the specific performance of a contract, depends, of course, upon the same principles as govern a direct decree for specific performance. So upon a bill for a specific execution of an agreement and an injunction it is clear that if, upon the plaintiff's case, as made out by his bill, he is not entitled to a specific execution of the agreement set up by him, he cannot be entitled to an injunction, which is only ancillary to the principal object of the suit."

This being the general rule, we will next consider whether the contract in this case should be literally enforced.

[2] It is well settled that, where a contract is not capable of present performance, but the performance would require the constant supervision of the court for a long period of time, a court of equity will not decree specific performance, but will leave the parties to their remedies at law, except where the interest of the public is involved. Salt Co. v. Railway Co., 99 Tex. 434, 90 S. W. 863, 3 L. R. A. (N. S.) 828; Carrico v. Stevenson, 135 S. W. 260; Railway Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385; Stewart v. White, 189 Ala. 192, 66 South. 623. Other cases might be cited, but the foregoing are sufficient.

In Salt Co. v. Railway Co., supra, it is said:

"Indeed, it is generally held that the mere fact that a decree for specific performance will require a constant superintendence by the court of the execution of a contract continuing through a long period of time, is sufficient reason for denying the relief."

In Railway Co. v. Marshall, supra, it is said:

"If the court had rendered a decree restoring all the offices and machinery and appurtenances of the road which had been removed from Marshall to other places, it must necessarily superintend the execution of this decree. It must be making constant inquiry as to whether every one of the subjects of the contract which have been removed has been restored. It must consider whether this has been done perfectly and in good faith, or only in an evasive manner. It must be liable to perpetual calls in the future for like enforcement of the contract, and it assumes in this way an endless duty inappropriate to the functions of the court, which is as ill calculated to do this as it is to supervise and enforce a contract for building a house or building a railroad, both of which have in this country been declared to be outside of its proper functions, and not within its powers of specific performance."

We are of the opinion that this case comes within the rule just announced, and that in a proper action there will be no insurmountable difficulty in ascertaining the damages sustained by appellant for the breach of the contract by appellee.

The judgment is affirmed.