UNITED COIN METER COMPANY, INC. et al., Appellants,

v.

JOHNSON–CAMPBELL LUMBER COMPANY et al., Appellees.

No. 17394.

Court of Civil Appeals of Texas, Fort Worth.

April 6, 1973.

Abney, Burleson, Bondies, Conner & Mills and Phil Burleson, Dallas, for appellants.

Loe & Warren and H. J. Loe, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

The trial court rendered judgment for the defendants, Johnson-Campbell Lumber Company, a partnership, and Ralph G. Campbell, to the effect that plaintiffs take nothing by their suit and the plaintiffs, United Coin Meter Company, Inc., and United Coin Meter Company have brought this appeal.

The plaintiffs sued for specific performance by the defendants of two separate and distinct written contracts relating to the right of plaintiffs to put and keep coin-operated laundry equipment in two different apartment complexes that are presently owned by the defendants. Plaintiffs also sought a mandatory injunction against defendants ordering defendants to remove the laundry equipment that is presently on the premises involved and to reinstall on such property the laundry equipment belonging to plaintiffs that had been removed. The plaintiffs did not seek in this case to recover damages.

The defendant, Johnson-Campbell Lumber Company, is a partnership, and the defendant, Ralph Campbell, is the managing partner.

At the time of trial defendants were the owners of a 42-unit apartment complex located at 2231 Capri Drive in Fort Worth and of another apartment complex located in Euless, Texas, at 1450 Sagebrush Trail.

On February 11, 1966, a former owner of the apartment units located on Capri Drive entered into a written contract with United Coin Meter Company wherein the owner was referred to as lessor and the Coin Company was referred to as lessee. The agreement provided that lessee hires from lessor the laundry room on the premises described therein for a term of five years from date. Lessee was thereby giv-

en the right of exclusive installation and operation of coin-operated laundry equipment on the apartment premises for which lessee agreed to pay lessor of the gross receipts taken from the equipment on a monthly basis 30% thereof as the total lease fee.

The agreement required lessee to maintain public liability insurance without expense to lessor.

The agreement provided that lessor shall furnish gas, water and electricity and shall clean and maintain the premises without expense to lessee. Under the agreement lessee was obligated to service, maintain and repair the equipment that it installs without expense to lessor.

Lessee was given the right of ingress and egress during the term provided for. The agreement provided that it would be binding on the parties and their heirs and assigns.

This agreement further provided that it would be automatically renewed for the same period of time (5 years) unless cancelled by either party in writing 30 days prior to its expiration.

On December 14, 1965, a prior owner of the apartments on Sagebrush Trail in Euless, executed a similar agreement with United Coin Meter Company.

It provided that owner leased to Coin Company all laundry space in this apartment project for the purpose of installing, maintaining and servicing a special washing, drying and laundry equipment system for a term of five years, ending December 13, 1970.

This lease provided that it would continue in force for an additional *two years* unless notice of cancellation in writing by owner was given to Coin Company not less than 60 days before the end of the original term of the agreement.

By the agreement the Coin Company was obliged to furnish the investment nec-

essary to equip the laundry room with washing machines and drying equipment and to service the equipment and keep it in repair during term of the contract and to pay owner 35% of the gross income from the equipment monthly. Coin Company also agreed to furnish at its expense public liability insurance protecting from suits arising from operating the equipment. Coin Company also agreed to furnish necessary advertising and to demonstrate and instruct tenants in the use of the equipment.

The apartment owner agreed to permit Coin Company employees ingress and egress during reasonable hours for purpose of making installations, inspections, servicing equipment and removing coins. The owner agreed not to install or let others install similar equipment on the apartment premises. Owner agreed to promptly report to Coin Company the need for service and to keep the laundry space clean.

It will be noted that the five year term of this last agreement ended on December 13, 1970, and that the agreement only provided for one renewal term and that was for *two years*. This two year renewal term expired on December 13, 1972, while this case was on appeal.

The agreement relating to the apartments on Capri Drive was for a term of five years and it provided for a renewal of one five year term. That renewal term will not expire until February 11, 1976.

This was a non-jury trial. The court's findings of fact provided in substance that: while both agreements were in full force on May 14, 1971, the defendants, owners, took possession of the laundry rooms in both apartment units; the machines involved are coin-operated and under the agreement Coin Company employees are required to come on the premises, open the cash boxes, count the receipts and to account to lessor for his share of gross receipts; that for the operation to be profitable it was necessary that cooperation, good will, mutual trust and confidence ex-

ist between the parties; that the agreements require Coin Company to perform substantial services; that plaintiffs did not seek to recover damages and offered no evidence trying to prove their damages.

The trial court concluded that defendants breached the agreement; that plaintiffs failed to show that they had no adequate remedy at law; plaintiffs failed to show that irreparable injury would result if they were denied specific performance and a mandatory injunction; and that the trial court concludes, in the exercise of its discretion, that the relief plaintiffs sought should not be granted.

Plaintiffs had not breached the agreement at the time defendant took over the laundry rooms.

The evidence showed that defendants acquired the Capri Drive apartments in 1967 and acquired the Sagebrush Trail apartments in 1968. On those dates the Coin Company equipment was already located in the laundry rooms of both apartment units under the terms of these agreements.

The evidence shows that United Coin Meter Company dissolved in April, 1969, at the time that Raymond Johnson bought out the interests of people named Ford. A successor corporation, which was the other plaintiff, was formed and all the assets of the original Coin Company, including its interests in the two contracts here involved, were transferred to this new corporation which is now United Coin Meter Company, Inc.

The basic contentions, as we understand them, in plaintiffs' first four points are: the two written instruments that plaintiffs seek to specifically enforce are actually leases of real estate; since defendants breached the leases, plaintiffs are entitled to have them specifically enforced as a matter of right and as a matter of law under the proof made; that since the written contracts were leases of realty, and since defendants breached them, it was not necessary in this case, to be entitled to have

the leases specifically enforced and to get the mandatory injunction sought, that plaintiffs prove that they have no adequate remedy at law and that they will suffer irreparable injury; and that the question of whether or not specific performance and a mandatory injunction should be granted by the trial court was not under the facts of this case a matter that lay within the discretion of the trial court and that plaintiffs, on proving that defendants breached the agreements, were entitled to such relief as a matter of law and as a matter of right.

We overrule plaintiffs' first four points.

We hold that the plaintiffs were not entitled to specific performance as a matter of right and that we are required to affirm the case regardless of whether or not the written contracts involved here are leases of real estate.

■ "As a general rule, the specific performance of a contract by a court of equity is not a matter of absolute right in the parties demanding it, . . . and applications for such relief are addressed to the sound discretion of the court." See 81 C.J.S. Specific Performance § 9, p. 417; Steves v. United Services Automobile Association, 459 S.W.2d 930 (Beaumont Civ. App., 1970, ref., n. r. e.); Ferguson v. von Seggern, 434 S.W.2d 380 (Dallas Civ.App., 1968, ref., n. r. e.); and W. K. Ewing Co. v. Krueger, 152 S.W.2d 488 (San Antonio Civ.App., 1941, ref., w. o. m.).

■ It is also a settled rule that in order to get specific performance of a contract the party seeking it must show that he has no adequate remedy at law by way of an action for damages for breach of contract, and if an adequate remedy at law is available, then specific performance will not be granted. See 52 Tex.Jur.2d 542, Specific Performance, Sec. 22; 81 C.J.S. Specific Performance § 6, p. 414; and Lone Star Salt Co. v. Texas Short Line Ry. Co., 99 Tex. 434, 90 S.W. 863 (1906).

The plaintiffs contend that the first general rule above mentioned does not apply in this case, because the contracts involved here are actually leases of real estate and that a different rule applies in such cases. They contend that in this case they did not have to offer proof that they had no adequate remedy at law because since the contracts involved real estate, it will be presumed that an action for damages is an inadequate remedy.

The rule relied on by plaintiffs is stated in the case of Bennett v. Copeland, 149 Tex. 474, 235 S.W.2d 605 (1951) as follows:

" '. . . a contract for the sale of land will be enforced as a matter of right, regardless of its wisdom or folly, if fairly and understandingly made. . . . courts cannot arbitrarily refuse specific performance of a contract, because they deem it unwise, or because subsequent events disclose that it will result in a loss to defendant; but to justify the refusal of this relief it must appear that the defendant had been misled and overreached to such an extent that the contract is unconscionable.' . . .

" '. . . Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable,—*when it possesses none of those features which, in ordinary language, influence the discretion of the court,*—it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach.' " (Emphasis ours.)

The same rule is stated in 52 Tex.Jur.2d 638, Specific Performance, Sec. 92. The rule relied on by plaintiffs, as stated there, also makes it clear that such rule does not apply in instances where the contract is objectionable in any of the features that address themselves to the court's discretion.

We are convinced that the contracts that are involved here do possess features which influence the discretion of the court.

One such feature is the fact that there remained after the trial a period of several years before the term covered by at least one of the contracts came to an end and the contracts called for the performance by the parties or their representatives of numerous additional, yet unperformed acts, during that future period. A specific performance decree under those circumstances would require considerable supervision. See Edelen v. W. B. Samuels & Co., 126 Ky. 295, 103 S.W. 360 (1907) and 81 C.J.S. Specific Performance § 9, page 421, wherein it is pointed out that a court must use discretion in determining if a legal remedy is adequate and that a discretion is involved in determining if the remedy lacks mutuality. These are additional features of these contracts that influence the discretion of the court.

In Kress v. Soules, 152 Tex. 595, 261 S.W.2d 703 (1953) the Supreme Court stated in substance that although specific performance of a contract for the sale of realty will ordinarily be granted, it is not a remedy that exists as a matter of right. Whether plaintiff seeking specific performance has an adequate remedy at law is an important factor to be considered in such cases.

For the reasons stated we are convinced that the rule relied upon by plaintiffs is not applicable to the facts of this case. Since it is not, the trial court correctly held that a disposition of this case was governed by the general rules relating to specific performance that we have hereinabove stated. In other words the trial court's discretion was properly involved in determining whether or not to grant specific performance and we are convinced that that court did not abuse its discretion in refusing to grant specific performance under the facts of this case.

Since the disposition of this case was governed by the general rules that we have hereinabove stated, it was also necessary,

before plaintiffs would be entitled to a decree of specific performance that they prove that they had no adequate remedy at law. This they did not do.

■ It is obvious that since the plaintiffs had been engaged in the performance of each of these contracts for more than 5 years that all data needed for proving the damages they would sustain by reason of defendants' breach of the contract is readily available to them. The defendants offered into evidence the checks that plaintiffs had paid to them covering their proportionate part of the income from the machines involved. It could easily be determined how much plaintiffs had grossed from the contracts. Plaintiffs' president had many years of experience in the business and is bound to have known the amount of expense and depreciation plaintiffs had incurred in performing their obligations under the contracts during the part of the term that had already expired. It appears obvious to us that the amount of damages plaintiffs sustained from a breach of the contracts could be readily proven. Since the only benefit plaintiffs could get from a performance of the contracts for the rest of their terms is the amount of net profit they would realize from a complete performance of the contracts, a judgment awarding plaintiffs a recovery of that sum would be an adequate remedy. See Lone Star Salt Co. v. Texas Short Line Ry. Co., 99 Tex. 434, 90 S.W. 863 (1906).

Since a disposition of this case is governed by the general rules above announced, the trial court properly denied plaintiffs' prayer for specific performance for the reason that plaintiffs failed to establish that they had no adequate remedy at law. The evidence showed that plaintiffs did have an adequate legal remedy at law by way of an action for damages.

■ The plaintiffs' application for an injunction is in effect the same as an application for specific performance because the effect of granting the injunctive relief would be to compel the carrying out of the contract. When this is true the application for injunctive relief will not be granted where an action for damages affords an adequate legal remedy. See Beckham v. Munger Oil & Cotton Co., 185 S.W. 991 (Dallas Civ.App., 1916, no writ hist.) wherein the following rule is set out at page 992: " 'Whether a court of equity will grant an injunction the effect of which is to compel the specific performance of a contract, depends, of course, upon the same principles as govern a direct decree for specific performance. . . . .' "

■ The plaintiffs here did not prove themselves entitled to specific performance. The court, therefore, properly refused to grant the injunctions sought in view of the rule just stated.

Plaintiffs were not entitled to a decree of specific performance in this case for other reasons.

■ "It is a settled principle that a court of equity will ordinarily decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance; it will not decree a party to perform a continuous series of acts extending through a long period of time, requiring constant supervision by the court, . . . .." 81 C.J.S. Specific Performance § 75, page 584. This is the law in Texas. See Beckham v. Munger Oil & Cotton Co., 185 S.W. 991, supra.

The following is from Williston on Contracts, Revised Edition, Vol. 5, Sec. 1430, "Completeness of relief": "At least in the enforcement of affirmative promises a court of equity deems it neither wise nor just to enforce one or more of such promises in a contract unless it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant."

■ The contracts that are here involved were in part executory at the time of the trial and the contracts required the plaintiffs to install the laundry machines, maintain them, service them and keep them repaired during the remainder of the contract term. In addition, the plaintiffs were required monthly, throughout the terms of the contracts, to go to the machines, collect the money from them, count it and to give the apartment owners their part of the proceeds. One of the contracts had several years yet to run.

The facts here were such that the court could not render a specific performance decree capable of being presently performed that would dispose of the entire controversy and this was an additional reason why the court did not err in refusing to decree specific performance of the contracts.

An examination of the contracts involved makes it apparent that many of the things that the plaintiffs were thereby required to do during the remaining terms of the contracts were incapable of being enforced in behalf of defendants by specific performance. Many cases hold that the remedy of specific performance is a mutual one between the parties to a contract and that before such a decree will be granted mutuality of remedy must exist. E. M. Goodwin, Inc. v. Stuart, 52 S.W.2d 311 (San Antonio Civ.App., 1932, affirmed in 125 Tex. 212, 82 S.W.2d 632, 1935). It does not exist here. Other courts hold that even though mutuality of remedy does not deprive a court of jurisdiction to specifically enforce a contract, it is addressed to the court's discretion and is an element to be considered in determining whether the court should grant specific performance. See 81 C.J.S. Specific Performance § 11, p. 425.

Another case that supports our holding here is the case of Galbreath v. Farrell, 249 S.W. 277 (Dallas Civ.App., 1923, no writ hist.). There the two plaintiffs and defendant agreed that defendant would furnish the money with which to buy a tract of land and the plaintiffs would over a period of time in the future do a number of different things. The three were to be equal owners of the land. The defendant repudiated the contract and plaintiffs sought specific performance. The court said at page 280:

". . . before a court of equity will enforce affirmative promises made by defendant in behalf of the plaintiff, it must also be able to enforce the affirmative promises made by plaintiff in behalf of the defendant. Such court never deems it wise or just to enforce one or more of the promises in a contract until it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant. . . .

". . . It is not sufficient to the ends of justice that appellants simply declare their willingness and ability to perform their part of the contract; there must be the ability of the court to enter a decree that compels such performance on their part. . . ."

■ Plaintiffs' fifth point of error is that the court erred in making its finding of fact No. 9, which was: ". . . for the arrangement to be successful and financially profitable, it is essential that cooperation, goodwill and mutual trust and confidence exist as between lessor and lessee."

The attack on the finding is based on the contentions that there is no evidence to support it and the finding is against the great weight and preponderance of the evidence.

We overrule the point.

The finding was obviously based on the testimony of Raymond Johnson, President of one of the plaintiff corporations.

The contracts required the apartment owners to keep the laundry room clean.

Mr. Johnson had been working for one of the plaintiffs since 1961. He testified that: cleanliness of a laundry room has a definite bearing on its income; apartment management can do almost anything to a laundry room; they can promote it, help the income to be substantial, or they can let it ride and not report machines that are out of order, thus preventing them from being kept in good repair, which will bring the income down; management has a lot to do with it; they can make or break you in the laundry room.

The sixth and last point of error is that the court erred in finding as a fact that the leases required that lessee perform substantial personal services in performing the agreements.

We hold that no reversible error was committed in connection with this finding and therefore overrule the point.

It is true that the services that the contracts obligated the plaintiffs to perform in the future over an extended period of time are not "personal" services in the sense that they will be performed personally by the plaintiffs. This would be impossible because the plaintiffs are corporations. And they are not "personal" services in the sense that there is a personal relationship involved as exists between an employer and his employee, and in which case the employee personally does the work. It is true that the word "personal" was probably not the best word to be used in that finding.

But a reading of the record and the statement of facts makes it apparent that the court was saying by this finding that the contracts involved provide that plaintiffs will be required, in performing their part of the agreement, to furnish in the future, throughout the remaining terms of the contracts, substantial services. The evidence establishing this fact finding is undisputed.

If the court chose the wrong word in calling the services *personal* services, then such action is immaterial because it is obvious what services he was talking about.

An attempt by a court to decree specific performance of the services that plaintiffs did agree to perform in the future throughout a period of over two years, even though they are not technically "personal" services, would require considerable supervision by the court for a long period after the rendition of the decree. This is the type of thing that influences the discretion of a court in determining whether or not to grant a specific performance decree.

The only relief sought in this suit was specific performance of two separate and distinct contracts and mandatory injunctions the effect of which would be to cause specific performance of the contracts.

The original five year term of the contract relating to the Capri Drive Apartments expired on February 11, 1971. The contract was renewed for another five year term which will not expire until February 11, 1976.

The original five year term of the contract relating to the Sagebrush Trail Apartments ended on December 13, 1970. This lease did not provide for a renewal term of five years, but it did provide for one renewal term of two years. This contract was renewed by the parties for the two year term and this renewal term expired on December 13, 1972.

The courts hold that: "A cause becomes moot when one 'seeks judgment upon some matter which, when rendered, for any rea-

son, cannot have any practical legal effect upon a then existing controversy.' " Bevil v. Wilfert, 241 S.W.2d 195 (Beaumont Civ.App., 1951, no writ hist.). See also McNeill v. Hubert, 119 Tex. 18, 23 S.W.2d 331 (1930).

This case, in so far as the controversy relates to the contract covering the apartments on Sagebrush Trail, has become moot while the case has been on appeal. It was not moot when the trial started in February, 1972.

■ It is obvious that since the terms provided for in the contracts have come to an end, that a court can no longer order specific performance of that contract.

We would have affirmed the entire judgment had not part of the case become moot.

The courts hold that when a case becomes moot while it is on appeal it is the duty of the appellate court to reverse the trial court's judgment and to dismiss the case. Texas & N. O. R. Co. v. Priddie, 127 Tex. 629, 95 S.W.2d 1290 (1936). For other cases see 4 Tex.Jur.2d 207, Appeal and Error—Civil, Sec. 703.

■ It is therefore ordered that the trial court's judgment in so far as it relates to that part of plaintiffs' action seeking injunctive relief and specific performance of the December 14, 1965, contract that covers the Sagebrush Trail Apartments is hereby reversed and that part of plaintiffs' case is hereby dismissed without prejudice.

That part of the trial court's judgment in so far as it relates to the part of plaintiffs' action seeking injunctive relief and specific performance of the February 11, 1966, contract that covers the apartments located on Capri Drive in Fort Worth is affirmed.

The costs are taxed against appellants.