**Justina Chen FALK, d/b/a Universal Marketing Group, Plaintiff,**

v.

**AXIAM INCORPORATED, George Moker, Philip E. Holt, and Robert M. Lee, Defendants,**

**Datong Locomotive Works, Intervenor.**

**Civil Action No. H–94–2917.**

United States District Court, S.D. Texas, Houston Division.

Aug. 5, 1996.

Ted Hirtz, Houston, TX, for Plaintiff & Intervenor.

Joe W. Meyer, Jeff Glass, Meyer, Knight & Williams, Houston, TX, for Defendants.

*MEMORANDUM AND ORDER GRANT-ING PLAINTIFF'S MOTION FOR PAR-TIAL SUMMARY JUDGMENT*

STACY, United States Magistrate Judge.

Before the Court is Plaintiff Justina Chen Falk, d/b/a Universal Marketing Group's Motion for Partial Summary Judgment (Document No. 37). On January 23, 1995, the parties consented to trial before United States Magistrate Judge Frances H. Stacy. On August 1, 1996, additional parties consented to a trial before the Magistrate Judge. Upon such consent, the case was transferred by the District Judge to Magistrate Judge Stacy for all proceedings.

After reviewing the Motion for Partial Summary Judgment, the response, the parties' summary judgment evidence, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Partial Summary Judgment is GRANTED.

## I. Background

On June 15, 1994, Plaintiff Justina Chen Falk d/b/a Universal Marketing Group ("Falk") filed suit against Axiam Incorporat-

ed ("Axiam") for breach of contract in the 215th District Court of Harris County, Texas. In her Original Petition, Falk alleged that she, as an export purchasing agent, purchased a fully automated piston skirt size gauge with diameter measurement ("the gauge") from Axiam for export to a client in China. According to Falk, included in the purchase agreement, was an obligation on the part of Axiam to travel to China to install the gauge, test the gauge, and train others to correctly use the gauge. In her breach of contract claim, Falk alleges that Axiam has not performed these obligations. In her Original Petition, Falk sought specific performance of Axiam's contractual obligations as well as monetary damages.

On August 23, 1994, Axiam removed the case to this court on the basis of diversity. 28 U.S.C. § 1332. Thereafter, Falk added claims against Axiam for deceptive trade practices, tortious interference with an advantageous business relationship, and fraud. Additionally, Falk added claims against certain employees and agents of Axiam, including George Moker, Philip E. Holt and Robert M. Lee. On May 30, 1996, Datong Locomotive Works ("Datong"), the Chinese entity which was intended to be the end-user of the gauge, intervened in this suit. Datong alleged the same causes of action against Axiam as Falk.

On April 8, 1996, Falk filed a Motion for Partial Summary Judgment on her breach of contract claim. In that motion, Falk seeks an Order of the Court ordering specific performance of Axiam's obligations to install the gauge, test the gauge, and train others to correctly use the gauge. It is that motion which is now before the Court.

## II. Summary Judgment Arguments

Falk argues that she is entitled to summary judgment on her breach of contract claim. According to Falk, there is irrefutable evidence that Axiam, as part of its sale of the gauge, agreed to travel to China to install the gauge, test the gauge, and train certain individuals to use the gauge. There is also irrefutable evidence that Axiam, to this date, has not fulfilled its agreement to travel to China to install the gauge, test the gauge,

and train certain individuals to use the gauge. Falk seeks specific performance of these obligations in her Motion for Partial Summary Judgment.

In response to the Motion for Partial Summary Judgment, Axiam does not dispute that it was obligated to install, test, and train others to use the gauge. Additionally, Axiam does not claim that it has fulfilled these obligations. Instead, Axiam argues that it was released from any obligation to travel to China to install, test, and train others to use the gauge because the end-user of the gauge, Datong, did not provide Axiam with site preparation information. In its Response to the Motion for Partial Summary Judgment, Axiam argued:

[N]either Plaintiff nor Datong Locomotive Works ever communicated with Axiam to confirm the "site preparation" information as well as other critical information necessary form Axiam to initiate its travel to China for the purpose of installing the Gauge and training personnel.... In the absence of Datong Locomotive Works and/or China Railway Import & Export Co. performing the required "site preparation" as well as advising the "exact location" of the Gauge, it would have been a complete waste of time and effort for Axiam to expend several thousand dollars in travel costs alone in order to attempt to accomplish installation and training.... Neither Plaintiff nor Datong Locomotive Works ever communicated with Axiam in response to its repeated inquiries. Plaintiff and/or Datong Locomotive Works and/or China Railway solely bear responsibility for the fact that installation and training never occurred.

Response at 6–7. Axiam has provided the court with copies of three letters spanning a three month period in which it repeatedly requested site preparation information from Falk and Datong. Additionally, Axiam argues that it was absolved of any obligation to perform the installation and training after the crate containing the gauge was opened. According to Axiam, because the crate was opened, the gauge must be returned to the United States so that Axiam can determine

whether the gauge was damaged when the crate was opened.

As well as responding to the substance of Falk's Motion for Partial Summary Judgment, Axiam complains about Falk's summary judgment evidence. Specifically, Axiam complains that the documents attached to Falk's Motion for Summary Judgment are inadmissible hearsay. According to Axiam, the documents are hearsay, which do not fall within the business records exception to the hearsay rule.

## III. Summary Judgment Standard

The United States Supreme Court has held that Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). This standard provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 314 (5th Cir.1995). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57,

89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment if, in its discretion, it determines that "a better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15; *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir.1989).

## IV. Falk's Summary Judgment Evidence is Proper

Axiam objects to Falk's summary judgment evidence on the basis that the evidence attached to Falk's Motion for Summary Judgment is hearsay, which does not fall within one of the exceptions to the hearsay rule. Specifically, Axiam complains that the copy of the purchase order, copy of the certificate of quality and copy of the faxes

attached to Falk's affidavit have not been established as and cannot be regarded as business records. According to Axiam, because the documents attached to Falk's deposition were not prepared by Falk, they cannot constitute business records within the meaning of FED.R.EVID. 803(6). In addition, Axiam objects to the statement in Falk's affidavit, wherein she avers that she "bargained for and Axiam agreed to send an Axiam engineer to the Datong Locomotive Works to install the piston gauge, test it, and train the Datong personnel in its operation." According to Axiam, this averment is objectionable because it sets forth an ultimate fact or conclusion.

In response to the objections to her summary judgment evidence, Falk points out that she is in the export business, requiring her to keep as business records all documentation surrounding an export transaction. For that reason, the copy of the purchase order and copy of the certificate of quality, which she submitted as summary judgment evidence are business records. Additionally, Falk argues that the faxes attached to her affidavit in support of her Motion for Partial Summary Judgment are admissible because they do not contain hearsay.

Hearsay, "a statement, other than one made by [a] declarant while testifying at [a] trial or hearing, offered in evidence to prove the truth of the matter asserted," is not admissible as evidence. FED.R.EVID. 801(c) & 802. However, neither a prior statement by a witness nor an admission of a party opponent is hearsay. Various exceptions to the hearsay rule exist, including the business records exception found in FED.R.EVID. 803(6). FED.R.EVID. 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness:

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of the acts, events, conditions, opinions, or diagnoses, made at or near the time by, or information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activi-

ty to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

A review of Falk's summary judgment evidence establishes that it is all admissible either as non-hearsay, or under the business records exception to the hearsay rule.

■ Attached to Falk's affidavit in support of her Motion for Partial Summary Judge is the purchase order and certificate of quality for the gauge at issue in this case. Exhibits "A" and "B". These documents, which were kept by Falk in the regular course of her business as an export agent, fall within the business records exception to the hearsay rule. Axiam's argument that these documents do not satisfy the business records exception because Falk did not prepare them herself was the same type of argument considered and rejected by the Fifth Circuit Court of Appeals in *Mississippi River Grain Elevator, Inc. v. Bartlett & Company, Grain,* 659 F.2d 1314, 1318–19 (5th Cir.1981). In *Mississippi River,* the Fifth Circuit in upholding the admission of the origin weight certificates, which were not prepared by the party offering them into evidence, held:

"Rule 803(6) does not require that the records be prepared by the business which has custody of them. Where circumstances indicate that the records are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation." The issue of admissibility under Rule 803(6) is chiefly a matter of trustworthiness. In this inquiry the trial court is given great latitude.

(quoting *United States v. Veytia–Bravo,* 603 F.2d 1187, 1191–92 (5th Cir.1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980)). Because Falk demonstrated through her affidavit that both the purchase order and the certificate of quality

were kept as records in the regular course of her business, and because there is nothing to indicate that the purchase order and certificate of quality are lacking in trustworthiness, both the purchase order, Exhibit "A", and the certificate of quality, Exhibit "B" are admissible under FED.R.EVID. 803(6). Axiam's hearsay objection to Falk Exhibits "A" and "B" is OVERRULED.

■ With respect to the two faxes submitted by Falk, one from John Seacord of Axiam, Exhibit "C", and the other from George Moker of Axiam, Exhibit "D", the Court finds that these documents are non-hearsay because they contain admissions of a party opponent. In both documents, Axiam representatives referenced Axiam's obligation to install, test and train personnel in China to use the gauge at issue in this case. Such statements are admissions of Axiam and cannot be considered hearsay under Fed.R.Evid. 801(d)(2)[1]. Axiam's hearsay objection to Falk Exhibits "C" and "D" is OVERRULED.

■ With respect to Axiam's objection to Falk's averment that Axiam agreed to send an engineer to China to install, test and train personnel to use the gauge at issue in this case, the Court finds that the averment is neither unsupported nor conclusory. The purchase order, Exhibit "A", as well as the two fax transmittals from Axiam representatives to Falk, Exhibits "C" and "D" fully support Falk's statement in her affidavit that Axiam agreed to send an engineer to China to install the gauge, test the gauge, and train personnel to use the gauge. Axiam's objection to this statement in Falk's affidavit is OVERRULED.

## V. Summary Judgment is Proper on Falk's Breach of Contract Claim

Falk alleges in her First Amended Complaint that Axiam breached the contract that it had with her when it failed and/or refused to send an engineer to China to install, test and train personnel to use the gauge at issue in this case. In response to that breach of contract claim, Axiam alleges as an affirmative defense that Falk, the purchaser of the gauge, and Datong, the end-user of the gauge, prevented its performance by failing to inform it of the location of the gauge, and failing to provide requested site preparation information.

■ To prevail on her breach of contract claim, Falk must establish (1) the existence of a valid contract; (2) performance or tendering of performance by the plaintiff; and (3) breach of the contract. *Stegman v. Chavers*, 704 S.W.2d 793, 795 (Tex.App.—Dallas 1985, no writ), *overruled on other grounds by Qantel Business Systems, Inc. v. Custom Controls Company*, 761 S.W.2d 302 (Tex. 1988); *Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex.Civ.App.—Texarkana 1981, no writ). Once Falk establishes each of those elements, Axiam may defeat the breach of contract claim if it can prove that Falk prevented its performance under the contract. *Atkinson Gas Company v. Albrecht*, 878 S.W.2d 236, 239 (Tex.App.—Corpus Christi 1994, error denied) ("As a general rule, performance is excused when a party to a contract prevents the other party from performing and thereby repudiates the contract"); *O'Shea v. International Business Machines Corp.*, 578 S.W.2d 844, 846 (Tex.Civ.App.—Houston [1st Dist.1979, error ref'd n.r.e.) ("As a general rule, performance is excused when a party to a contract prevents the other party from performing"); *L.H. Land Painting Co. Inc. v. S & P Construction, Inc.*, 516 S.W.2d 14, 16 (Tex.Civ.App.—Ft. Worth 1974, writ dismissed) ("The law is that if one party to a contract is prevented by the acts of the other party to the contract from performing such contract, then the party so

---

1. FED.R.EVID. 801(d)(2) provides:
   A statement is not hearsay if—
   (2) Admission by party opponent. The statement is offered against a party and is (A) the part's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

prevented from performing is excused from further performance of the contract").

■ After reviewing the summary judgment evidence before the Court, the Court concludes that Falk has met her burden of establishing the existence of a valid contract, performance on her part, and breach of the contract on the part of Defendant Axiam. Axiam, however, has not met its burden on its affirmative defense because it has not established that either Falk or Datong prevented it from performing under the contract.

## A. Neither Falk nor Datong Prevented Axiam from Performing under the Contract

Axiam's argument that it was excused from its obligation to install, test, and train personnel to use the gauge because neither Falk nor Datong provided it with "site preparation information" is belied by the summary judgment evidence Falk submitted in her Rejoinder to Axiam's Response to Falk's Motion for Partial Summary Judgment ("Rejoinder"). Although Axiam maintains, and Axiam's controller George Moker avers, that Axiam never received the site preparation information it requested from Falk and Datong, Falk has submitted several faxes which were sent to George Moker, the controller of Axiam, that evidence Falk and Datong's repeated attempts to obtain site preparation specifications from Axiam. Relevant portions of that correspondence in chronological order follow:

> Fax from Falk to George Moker, dated March 7, 1994:
>
> Site Preparation for Datong: Please advise required temperature, humidity, voltage, electric current, anti-shock attachment, compressed air, others.
>
> Can gage maintain the cleanness of compressed air, or an air filter is required?
>
> Datong will open the crate(s) only in the presence of an AXIAM representative. Please advise when this person will be able to travel. . . .
>
> In order for Datong to fully cooperate with AXIAM, please advise ASAP you *detailed* requirements for site prepara-

tion, final acceptance testing, training and handing over.

Exhibit "1C" to Falk's Evidence in Support of Rejoinder (Document No. 54).

> Fax from Falk to George Moker, dated March 9, 1994:
>
> A Ministry official called me early this morning asking about site preparation. We *must* have answers today. Time is of the essence. . . .
>
> Inspection, testing and training must be done to Datong's satisfaction—within the time frame—that's why site preparation is so critical.

Exhibit "1D" to Falk's Evidence in Support of Rejoinder (Document No. 54).

> Fax from Falk to George Moker, dated March 10, 1994:
>
> P.S.: Again, we need Site Preparation Instruction and your engineer's flight schedule to China in order to make proper arrangements in advance.

Exhibit "1F" to Falk's Evidence in Support of Rejoinder (Document No. 54).

> Fax from Cristine A. Dench, Executive Assistance to George Moker to Falk, dated March 11, 1994:
>
> THE SITE PREPARATION IS AS FOLLOWS:
>
> 1. NEED TEMPERATURE CONTROLLED ROOM, ENVIRONMENTALLY CLEAN ROOM, FREE FROM VIBRATIONS.
>
> 2. NEED AIR COMPRESSOR HAVING OUTPUT PRESSURE OF 100 psi. AIR SHOULD BE AS DRY AS POSSIBLE WITH NO MOISTURE CONTENT.
>
> 3. AIR HOSE FOR THE AIR DRYER FOR ¼" FITTINGS.
>
> 4. THREE PHASE, 220V, POWER SUPPLY.
>
> 5. TABLE TO SET–UP MONITOR, TRACK BALL AND PRINTER.
>
> Please let us know when equipment has arrived in Beijing and site has been prepared, we will then make travel arrangements for our engineer to go to China.

Exhibit "1H" to Falk's Evidence in Support of Rejoinder (Document No. 54).

Fax from Falk to George Moker, dated March 22, 1994:

It took us a week plus numerous phone calls and faxes to finally get basic site preparation info. last time, which had Datong and the Ministry officials worried and upset. The following questions should not be difficult to answer.

Exhibit "1I" to Falk's Evidence in Support of Rejoinder (Document No. 54).

Fax from Falk to Philip Holt, dated April 8, 1994:

Please respond to Datong's questions as soon as possible.

a. Pressured air: Is it 7 kgf/cm2?

b. Air Dryer:

(1) Length of air hose?

(2) Is I.D. 30 mm?

Exhibit "1J" to Falk's Evidence in Support of Rejoinder (Document No. 54).

Letter from Falk to George Moker, dated April 14, 1994:

The shipment arrived in Beijing on March 12, 1994. Axiam has been paid in full. We again ask you to respond to questions regarding site preparation.

Exhibit "1N" to Falk's Evidence in Support of Rejoinder (Document No. 54). Once site preparation specifications were received by Falk and Datong, Falk's submissions also show that Datong informed Axiam that site preparation was complete and installation and training could begin as soon as Axiam sent its engineer. Relevant portions of that correspondence in chronological order follow:

Copy of Fax from Tang Yunien to George Moker, dated February, 1995[2], which Moker sent to Bob Bingham of Bingham, Rainey & Lea, P.C. on March 3, 1995:

It has almost been one year since the arrival of the Fully Automated Piston Skirt Size gage shipped by Axiam in March of 1994. We have been awaiting Axiam engineer coming to us for accom-

plishment of installation, training, commissioning and final acceptance of the Good as per the Contract. However, up to the time being Axiam hasn't advise us about the exact date of its engineer coming to China. . . .

Unopened shipment of the Good is on storage in Measuring Center of Datong Locomotive Works to be unpacked and checked by Axiam engineer.

Contracted Good has been set up in a air-conditioned room at the Measuring Center specially prepared to meet all requirements for temperature, humidity, earthing impedance, shock and magnetic interference proofing by the Gage. We also prepared a new air compressor with the output of 1bf per square inch (7kgf per square centimeter). Please tell us whether you have other requirement for site preparation . . .

We expect you as soon as possible to send your engineer to us for accomplishment of installation, training, commissioning and final acceptance of the Good as per the Contract.

Exhibit "2" to Falk's Evidence in Support of Rejoinder (Document No. 54).

Copy of Fax from Tang Yunien to George Moker, dated March 22, 1995, which Moker sent to Bob Bingham of Bingham, Rainey & Lea, P.C. on March 23, 1995:

Your above referenced letter sent via express mail has been received. Thank you for your response to our fax. As the legal owner of the Good supplied by Axiam, we has [sic] been urging Axiam and Universal Co. to duly execute the Contract completing the installation and training of the gage for over one year. Therefore we would like to directly contact with you and with great interest to learn the substantial content of your proposal stated in your letter of March 13, 1995 if Axiam Inco. [sic] is still sincerely committed to execution of the

---

**2.** There is no date on the first fax from Tang Yunien to George Moker, which George Moker sent to Bob Bingham of Bingham, Rainey & Lea, P.C. on March 3, 1995. In his affidavit accompanying that fax, Tang Yunien's states that the correspondence was sent to Moker in late February 1995. Statement of Tang Yunien, Exhibit "2" to Evidence in Support of Rejoinder (Document No. 54).

Contract and make compensation for the long delay which is due to the responsibility of both Universal and Axiam.

We have made all necessary preparations for the installation. Final commissioning and training of the Gage such as electricity, compressed air, and personnel supply awaiting Axiam engineer for accomplishment of above work. However we will have to make our own arrangement if you fail to make up your mind and inform us the exact date of Axiam engineer coming to China before the end of March.

Exhibit "2" to Falk's Evidence in Support of Rejoinder (Document No. 54). Thus, while Axiam claims that it did not know the location of the gauge in China, and did not have information about the site preparation undertaken by Datong, Falk's submissions prove to the contrary.

First, in the fax from Tang to Moker dated March 3, 1995, Tang informed Moker that the gauge was being kept at the Measuring Center of Datong Locomotive Works. Exhibit "2" to Falk's Evidence in Support of Rejoinder (Document No. 54). The address for the Measuring Center of Datong Locomotive Works was provided to Axiam by Falk on several occasions, including in a fax dated December 6, 1993, and a fax dated January 19, 1994. Exhibits "1A" and "1B" to Falk's Evidence in Support of Rejoinder (Document No. 54). Given this correspondence, which establishes that Axiam, as of February 1995, knew where the gauge was being stored in China, Axiam cannot prevail on an excuse defense premised on a lack of knowledge as to the whereabouts of the gauge. Second, as the numerous faxes from Falk show, site preparation specifications were repeatedly requested of Axiam. Moreover, the faxes from Tang show that Datong advised Axiam that site preparation was complete and urged Axiam to come to China and fulfill its obligation to install the gauge and train personnel to use the gauge. Because Falk's submissions show that both Falk and Datong, on numerous occasions, requested site information specifications from Axiam, and because the submissions also show that Datong informed Axiam in February of 1995 that site preparation was complete, Axiam cannot prevail on an excuse defense premised on Falk and Datong's refusal or failure to provide it with site preparation information. Falk's submissions show that both Falk and Datong attempted to get site preparation specifications from Axiam and that once those specifications were received Datong complied with them and informed Axiam that site preparation was complete. Axiam's excuse defenses to Falk's breach of contract claim, which are refuted by the summary judgment evidence before the Court, do not justify Axiam's failure to fulfill its contractual obligations to install, test and train personnel to use the gauge at Datong Locomotive Works in China.

Although Axiam points to certain deposition testimony, wherein Falk admits that the installation, testing and training of the gauge could not be completed without the cooperation of Tang Yunien, the Director of Measurements at Datong, and testimony in which Falk admits that Axiam attempted to speak with Director Tang on several occasions, Exhibit "B" to Axiam's Response to Plaintiff's Motion for Summary Judgment, this summary judgment evidence does not raise a genuine issue of material fact on Axiam's affirmative defense of excuse. Falk has submitted evidence that Datong, through its Director Tang, informed Axiam in February and March of 1995 that the site preparation was complete. Following that correspondence, there is no evidence that Axiam attempted to perform its obligation to install, test, and train personnel on the use of the gauge. Moreover, there is no evidence that any action or inaction on the part of Falk or Datong prevented Axiam's performance. Because Tang's correspondence to Axiam of February and March 1995 shows that Director Tang attempted to cooperate with Axiam so that Axiam could install, test and train personnel on the use of the gauge at issue in this case, neither the affidavit of George Moker, in which he states that Datong never provided Axiam with site preparation information, nor Falk's deposition testimony regarding Tang's need to communicate and cooperate with Axiam, creates a genuine issue of material fact on Axiam's affirmative defense of excuse. The evidence before the

Court, as set forth above, shows that Falk and Datong repeatedly requested site preparation specifications; once those specifications were received by Datong and complied with, Datong provided Axiam with site preparation information and requested that an engineer be sent to install, test and train personnel on the use of the gauge. As the evidence before the Court does not support Axiam's defense that it was prevented from complying with its contractual obligations to provide installation, testing and training, that affirmative defense cannot defeat Falk's breach of contract claim.

### B. The Uncrating of the Gauge Does Not Relieve Axiam of its Contractual Obligations

■ Axiam's argument that it is now excused from its obligation to travel to China in order to install, test, and train personnel to use the gauge because Datong and Falk, in disregard of Axiam's instructions, uncrated the gauge without Axiam personnel present, fails in light of Axiam's complete failure to send personnel to China to supervise the uncrating of the gauge. The argument also fails in light of Axiam's failure to object to the uncrating of the gauge, and Axiam's inconsistent instructions about the uncrating of the gauge. Finally, the argument fails in light of the affidavit of Robert Mosher, a former employee of Axiam who avers that the gauge was not damaged when it was uncrated.

The summary judgment evidence shows that the gauge was uncrated by officials of the Chinese Ministry of Railways sometime in late March 1995. Affidavit of Falk, attached as Exhibit "1" to Evidence in Support of Rejoinder (Document No. 54). The uncrating took place following two faxes from Falk to Axiam's attorney Ben Bingham about the possible uncrating of the gauge. On March 10, 1995, Falk explained the uncrating to Mr. Bingham:

> Because of Axiam's failure to complete its contract, the gage has been in its sealed crates ever since March 12, 1994. I informed Tina that the officials at the Chinese Ministry of Railways would order an inspection of the gage in Datong. I again

asked Tina to have you get back with me as soon as possible. For the record, it's regrettable to say that so far, both of my requests have been ignored.

Exhibit "10" to Evidence in Support of Rejoinder (Document No. 54). On March 13, 1995, Falk faxed Bingham the following note: "This is to inform you that, with your implied consent, the Chinese Ministry of Railway officials have ordered the gauge to be inspected". Exhibit "1P" to Evidence in Support of Rejoinder (Document No. 54). Because Axiam failed to send personnel to China to oversee the uncrating of the gauge and because Axiam failed to object to the uncrating of the gauge by Chinese officials, Axiam waived any right it had to complain that the gauge was opened without one of its representatives being present. *See generally Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, error ref'd n.r.e.) (general discussion of waiver principles).

The summary judgment evidence also shows Axiam provided Falk and Datong with inconsistent instructions about the uncrating of the gauge. In a letter from Axiam Staff Vice President Robert M. Lee to Falk dated November 19, 1993, Axiam requested that the gauge be uncrated and inspected for damage prior to the arrival of Axiam's agent in China for the installation, testing and training. Exhibit "1K" to Evidence in Support of Rejoinder (Document No. 54). In a fax transmittal of December 22, 1993, John Seacord of Axiam repeated those instructions. Exhibit "1M" to Evidence in Support of Rejoinder (Document No. 54). Later, however, Axiam orally instructed Falk and Datong to leave the gauge sealed in the shipping crate until the Axiam engineer, who was to install, test and provide training, could supervise the uncrating of the gauge. Affidavit of Falk, Exhibit "1" of Evidence in Support of Rejoinder (Document No. 54). Given those inconsistent instructions about the uncrating of the gauge, Axiam cannot base its failure to perform under the contract on Falk and Datong's uncrating of the gauge in March of 1995.

Finally, the summary judgment evidence shows that Robert Mosher, a former employ-

ee of Axiam who assisted in the manufacture of the gauge at issue in this case, inspected the gauge at Datong Locomotive Works in April of 1995, and found the gauge "was in as good a condition as it was when [he] last viewed it in January of 1994." Exhibit "3" to Evidence in Support of Rejoinder (Document No. 54). Mosher also stated, in affidavit form:

> There was no deterioration. There was no evidence of sabotage. The officials at Datong had the gauge placed in a site they had prepared which conforms to the specifications which Axiam and I had given them. The site they have prepared will protect the gauge. . . .
>
> I have worked on a number of Axiam gauging systems on site at various locations in the United States. In my opinion, the piston measurement gauge in Datong, China, does not need to be returned to Axiam in order to make it work according to the specifications of the Purchase Order.

Exhibit "3" to Evidence in Support of Rejoinder (Document No. 54).

Given all the summary judgment evidence regarding the uncrating of the gauge at issue in this case, and the uncontroverted summary judgment evidence that the gauge was neither damaged nor sabotaged during the uncrating process, Axiam cannot justify its failure to travel to China to inspect, test, and train personnel on the use of the gauge on the unsupervised uncrating of the gauge in March of 1995. As the evidence before the Court regarding the uncrating of the gauge does not support Axiam's defense that it was prevented from complying with its contractual obligations to provide installation, testing and training, that affirmative defense cannot defeat Falk's breach of contract claim.

## VI. Specific Performance

In her Motion for Partial Summary Judgment, Falk requests that the Court order Axiam to specifically perform its contractual obligations to install, test, and train personnel on the use of the gauge at issue in this case, as well as provide any additional parts and software to make the gauge functional.

■ On a breach of contract claim, the complaining party may seek monetary damages, specific performance of the contractual obligations, or both. Specific performance, however, will only be ordered when "damages will not adequately compensate the party for his loss, and he has no adequate remedy at law." *Horton v. Robinson,* 776 S.W.2d 260, 267 (Tex.App.—El Paso 1989, no writ); *See also Sammons Enterprises, Inc. v. Manley,* 540 S.W.2d 751, 757 (Tex.Civ.App.—Texarkana 1976, error ref'd n.r.e.); *United Coin Meter Co., Inc. v. Johnson–Campbell Lumber Co.,* 493 S.W.2d 882, 886–888 (Tex.Civ. App.—Ft. Worth 1973, no writ). When personal property of a "special, peculiar, or unique value or character" is involved, and the plaintiff cannot be compensated monetarily for the loss of the property, specific performance is available. *Madariaga v. Morris,* 639 S.W.2d 709, 711 (Tex.App.—Tyler 1982, error ref'd n.r.e.). Similarly, if the plaintiff can show that he cannot obtain the property or performance of the obligation from any other source, specific performance is available. *Id.*

■ In the instant case, the facts show that the gauge purchased by Falk from Axiam for Datong was a specialized device, which required the technical and specialized knowledge of Axiam engineers to install, test, and train Datong personnel in its use. *See generally* Affidavit and attached report of Robert Mosher, Exhibit 3 to Evidence in Support of Rejoinder (Document No. 54). Falk alleges that due to the specialized nature of the gauge and the specialized knowledge needed to install and test the gauge she has no adequate remedy at law. Plaintiff's First Amended Complaint (Document No. 32) at 9; Falk's Motion for Partial Summary Judgment (Document No. 37) at 2. Given these facts, Falk's allegations, the unique nature of the gauge at issue in this case, and the lack of a genuine issue of material fact on Falk's breach of contract claim, specific performance is proper.[3] *See Madariaga,* 639

---

**3.** While courts will generally not order specific performance of personal service obligations, *Martin v. Martin,* 230 S.W.2d 547, 550 (Tex.Civ.

App.—San Antonio 1950, error ref'd n.r.e.) (parents' agreement to convey property to son in exchange for son's promise to care for and sup-

S.W.2d at 711–712 ("Although plaintiff's petition must show that he does not have an adequate remedy at law, it is not necessary for him to allege in express terms that the plaintiff does not have an adequate legal remedy or that the breach cannot be adequately compensated in damages. It is sufficient if the facts brought out in the pleadings show such to be the case").

## VII. Conclusion

Based on the foregoing, the Court's conclusion that no genuine issue of material fact exists with respect to Falk's breach of contract claim, and the Court's conclusion that specific performance is available to remedy the breach at issue in this case, it is ORDERED that Plaintiff Justina Chen Falk's Motion for Partial Summary Judgment (Document No. 37) is GRANTED. Defendant Axiam, Incorporated is ORDERED to send an engineer to Datong Locomotive Works in China by October 1, 1996, with the necessary software, parts and equipment to install the gauge, test it, and to train the Datong personnel in its operation. Within ten days of this Order, Plaintiff Falk and Intervenor Datong shall provide Defendant Axiam with acceptable dates for the engineer's travel as well as specific directions to Datong Locomotive Works. Thereafter, Axiam shall immediately schedule the travel of its engineer and submit to the Court a Status Report, informing the Court of the exact dates the Axiam engineer will be in China to install, test and train personnel in the use of the gauge.

Should any party wish to challenge this Order by way of a motion for reconsideration, motion for leave to file an interlocutory appeal, or by any other action, such party shall initiate such action or file such motion no later than August 12, 1996. Thereafter, the party opposing such an action or motion shall have until August 19, 1996 to file a response.

port parents during their lifetime was not enforceable by specific performance or otherwise),

the type of obligation at issue in this case is a corporate obligation, not a "personal" one.